Anna L. Peabody, Appellee, *vs.* Katharine Burri *et al.*
Appellants.

*Opinion filed October 26, 1912.*

1. Limitations—*tax deed is good color of title if obtained in
good faith.* A tax deed regular in form is good color of title,
within the meaning of section 6 of the Limitation act, if obtained
in good faith, and good faith on the part of the holder of color
of title is presumed until overcome by proof.

2. Same—*outstanding title acquired by co-tenant in possession
inures to benefit of all.* A tenant in common in possession cannot
acquire color of title by procuring an outstanding title for his own
exclusive benefit but the title so acquired inures to the benefit of
all the co-tenants.

3. Same—*co-tenant cannot assert a title acquired at tax sale.*
One co-tenant cannot assert against another a title acquired by
purchase at a tax sale for taxes imposed upon the property during
their common ownership thereof, and the fact that one co-tenant
permits the land to be sold for taxes and subsequently purchases
the title based on such sale is evidence of bad faith on his part.

4. Same—*purchase by agent of co-tenant is the same as a pur-
chase by the principal.* A purchase of land at a tax sale by an
agent of one of the co-tenants of the land has no effect different
from a purchase by the co-tenant himself.

5. Same—*when holder of tax deed does not hold in good faith.*
Where one in charge of land as agent of one co-tenant permits
the land to be sold for taxes and purchases at the tax sale for his
principal's benefit but because of the principal's death assigns the
certificate of purchase to another co-tenant, who takes out a tax
deed, the latter co-tenant cannot, as against the others, rely upon
her tax deed as color of title obtained in good faith.

6. Same—*a will, to constitute color of title, must describe the
land.* A devise of all the lands belonging to the testator in this
State will, by such general description, pass to the devisee title to
all such lands belonging to the testator at the time of his death,
but such devise is too general to constitute color of title under the
Limitation act.

7. Same—*what is necessary to constitute a disseizin.* To con-
stitute a disseizin there must be outward acts of exclusive own-
ership of an unequivocal character, overt and notorious, and of
such a nature as by their own import will impart information and

give notice to the co-tenants that an adverse possession and actual disseizin are intended to be asserted against them.

8. SAME—*possession and payment of taxes do not, alone, bar rights of co-tenant.* Mere possession and payment of taxes by one co-tenant, however long continued, will not constitute a bar as against the other co-tenants, but there must, in addition, be acts of the co-tenant in possession which are so overt, notorious and unequivocal as to show adverse possession as against the others.

9. SAME—*a co-tenant has burden of proving disseizin.* A co-tenant who asserts a disseizin of the others has the burden of establishing, by a preponderance of the evidence, that her possession was hostile, actual, visible, notorious, exclusive, continuous and under claim of title, as it is essential, in order to start the running of the Statute of Limitations against co-tenants, that they be in some way given notice that an adverse possession and actual disseizin are intended.

10. LACHES—*knowledge is an inherent element of laches.* It is an inherent element of *laches* that the parties sought to be charged therewith have knowledge of the facts, and it is only when the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that *laches* will be held to bar his rights before the Statute of Limitations has run.

11. SAME—*when party does not occupy position of an innocent third party.* One who obtains land by devise from a co-tenant thereof, and who not only pays no consideration therefor but receives more in rents than she expends upon the land for improvements and taxes, does not occupy the position of an innocent third party when asserting *laches* against the claims of other co-tenants.

APPEAL from the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding.

HILL & BULLINGTON, THOMAS WILLIAMSON, and M. J. McMURRAY, for appellants.

EDWARD A. CRESS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Montgomery county quieting title in appellee, Anna L. Peabody, to a certain quarter section of land in that county.

255 — 38

From the record it appears that the land in question was entered by or in the name of Ezra Peabody on June 23, 1851, as bounty land for his services in the Florida war, a patent being issued to him November 1, 1851. He died at Salem, Massachusetts, July 5, 1854, intestate and unmarried, leaving as his only heirs-at-law his mother, Christiana Peabody; his brother, Brackley R. Peabody; his two sisters, Pamelia Arrington and Christiana Goldthwait, and certain nephews and nieces, children of a deceased sister, Mary Ann Arrington. Appellee, Anna L. Peabody, is the wife of George L. Peabody, the only child of Brackley R. Peabody. The appellants, except Katharine Burri, are descendants of the three sisters of Ezra Peabody. On the records of Montgomery county appears a deed conveying a part of said premises from Joseph Burri to Katharine Burri, dated in 1888. All parties herein concede that the description in this deed was a clerical error, neither the grantor nor grantee having or claiming any interest in this land, and the decree rightly removed said deed as a cloud on the title. Upon the death of Ezra Peabody his brother, Brackley R. Peabody, was appointed as administrator by the probate court of Essex county, Massachusetts, on the petition of the mother, Christiana Peabody, and his sister, Christiana Goldthwait. The original inventory filed in that State had written under the schedule "Real estate," the item, "Land warrant for 160 acres in State of Illinois, appraised at $160." These words were erased by a line drawn through them, and an entry reading substantially the same was made under the schedule "Personal property." The records of the probate court of that county do not show any other property as assets of said estate. No further steps appear to have been taken in said estate. The title of Ezra Peabody to this quarter section descended, at his death, two-sixths to his mother, one-sixth each to the brother and two sisters, and one-sixth to the children of a deceased sister. The mother, Christiana Peabody, died

testate at Salem in October, 1857. Her will left her interest in said land to her son, Brackley R. Peabody, describing it as "all my right to the one-fifth part (or whatever part it may be at my decease) in and to a 160-acre lot of land located in Montgomery county, State of Illinois, and which was owned by virtue of land warrant No. 3188 to my late son, Ezra Peabody." This will was not probated until after the death of Brackley R. Peabody, in 1874. In 1872 the land here in question was sold for taxes and bought in by George L. Peabody, husband of appellee. In February, 1874, Brackley R. Peabody died suddenly, intestate, leaving a widow, Lucinda D. Peabody, and leaving as his only heir his son, George L. Peabody. A few days thereafter the son, George L. Peabody, assigned the tax certificate to his mother. A tax deed based upon this tax certificate was issued by the county clerk of Montgomery county to the mother, Lucinda D. Peabody, in November, 1874. In June, 1885, Lucinda D. Peabody died testate, devising by her will to Anna L. Peabody, wife of George L. Peabody, "all the real and personal estate of which I shall die seized or possessed."

From the evidence it appears that Brackley R. Peabody controlled this property from 1854 until his death, in 1874; that George L. Peabody looked after the property for his father from 1872, through agents in Montgomery county, Illinois, until his father's death, and that thereafter, until his mother's death, he looked after it in the same way for his mother, and after her death for his wife down to the present time. The record does not disclose when they first began to rent the land, but it appears they received more than enough in rents each year from 1872 to the present time to pay all taxes and expenses connected with the land for such years. There are no houses or improvements upon the farm at the present time and never have been during these years, except a small house built upon the premises years ago and occupied for a short time

by a tenant. George L. Peabody testified that while the land was entered from the government in the name of Ezra Peabody, the expense of the entry and the actual trip to the land office was paid for him by Brackley R. Peabody; that Ezra was practically without means and died in debt to his brother, and the latter always claimed that the land rightfully belonged' to him (Brackley) and that Ezra only held the title as a matter of convenience. The witness further testified that the land was permitted to be sold for taxes in 1872 on the advice of attorneys in Illinois, for the purpose of clearing the title in favor of Brackley R. Peabody. The testimony also shows that this witness transferred the certificate of the tax sale to his mother, and that the latter willed this property to the appellee, Anna L. Peabody, because the witness feared that he might be in temporary financial difficulty and wished to protect himself and his wife against creditors. George L. Peabody during most of his active years was engaged in the hotel business in various of the eastern and middle States.

The principal question involved in this litigation is whether appellee is the owner of the entire quarter section or whether she is only the owner of an undivided one-half interest, and appellants, (except Katharine Burri,) in various shares, the owners of undivided interests aggregating the other one-half: The title of appellee to an undivided one-half interest is not questioned. Counsel for appellee contends that appellee is vested, as against appellants, with the other undivided one-half interest for any one of the following reasons: (1) *Laches* of appellants; (2) twenty years' adverse possession; and (3) payment of taxes for seven years under color of title, such color of title consisting of the tax deed and the will of Lucinda D. Peabody. We shall take up and discuss these questions in reverse order.

Appellee claims that she is the legal owner of the land in question under the tax deed, together with seven years'

successive payment of taxes, under section 6 of the Limitation act; that this tax deed, under that section, is good color of title. Claim and color of title made in good faith under this section has been held to be one that is a *prima facie* title; (*Irving* v. *Brownell,* 11 Ill. 402;) a sort of a title that a reasonable man would pay money for; an instrument in writing that purports, on its face, to convey title. (*Dickenson* v. *Breeden,* 30 Ill. 279.) It must be a "paper title," and cannot exist, in whole or in part, in parol, and such paper title must purport, on its face, to convey or transfer title. (*Converse* v. *Calumet River Railway Co.* 195 Ill. 204, and cases cited.) A tax deed regular in form, obtained in good faith, is good color of title under this statute. (*Taylor* v. *Hamilton,* 173 Ill. 392; *Walker* v. *Converse,* 148 id. 622.) Good faith on the part of the holder of color of title will be presumed. Bad faith must be established by proof to defeat the effect of a deed as color of title. *Dawson* v. *Edwards,* 189 Ill. 60; *Baldwin* v. *Ratcliff,* 125 id. 376; *Davis* v. *Hall,* 92 id. 85.

No question is raised on this record as to the payment of taxes for seven successive years, but it is insisted that the tax deed was not obtained in good faith. The general rule is, that no co-tenant will be permitted to assert against another co-tenant a title acquired by purchase at a tax sale for taxes imposed on their common property during joint ownership. (Freeman on Co-tenancy,—2d ed.—sec. 158.) This is the rule in this State. (*Goralski* v. *Kostuski,* 179 Ill. 177; *Burgett* v. *Taliaferro,* 118 id. 503.) A tenant in common in possession cannot acquire color of title to property by procuring for his own exclusive benefit an outstanding adverse title. The title so acquired inures to the benefit of all the tenants in common. (*Carpenter* v. *Fletcher,* 239 Ill. 440.) The fact that a co-tenant allows premises to be sold and afterwards acquires the title, based upon such sale, by purchase, is evidence of bad faith on his part. (*Hanna* v. *Palmer,* 194 Ill. 41, and cases cited.)

It is clear under these authorities that Brackley R. Peabody could not have obtained color of title under the tax deed had he been the purchaser and lived to receive such deed in his name. Must the husband of the appellee, and his mother, the wife of Brackley R. Peabody, be bound by the same rule?

George L. Peabody was the agent of his father, Brackley R. Peabody, at the time of the sale of this land for failure to pay taxes. He himself testified that they permitted the land to be sold so that his father could obtain a good title for all the tract. Where the husband of a co-heiress in possession of land purchases an outstanding tax title on the lands of the heirs he will be held to have purchased for the benefit of all the tenants in common, upon the condition, only, that they contribute their respective portions of the consideration actually paid by him. (*Busch* v. *Huston,* 75 Ill. 343.) Where a co-tenant enters into negotiations with a third person whereby such third person agrees to bid in the property at a tax sale and after the period of redemption expires to transfer it to the co-tenant, or where a co-tenant, by collusion with the third person, secretly redeems the property and after the period of redemption has expired takes a deed from the purchaser, the transaction is fraudulent and the purchasing co-tenant acquires no title as against his co-tenants. (*Lomax* v. *Gindele,* 117 Ill. 527; *Hoyt* v. *Lightbody,* 8 Ann. Cas. 984, and note.) An agent cannot acquire title at a sale of land for taxes. Whatever interest he does acquire will be held by him in trust for his principal. (*Gonzalia* v. *Bartelsman,* 143 Ill. 634; *Bracken* v. *Cooper,* 80 id. 221.) A purchase by one who is the agent of one of the co-tenants, or otherwise occupies a confidential relation to one of them, will generally be allowed no further effect than if made by his principal. (*Clark* v. *Lindsey,* 47 Ohio St. 437.) George L. Peabody, at the time of the sale of this property for taxes, must be held to have been acting as agent for his

father. In *Hanna* v. *Palmer, supra,* this court held that
a co-tenant could not neglect to pay taxes and suffer the
land to be sold and become the purchaser, either directly
or indirectly, at such sale and thus acquire the valid title
to land. The father not being able to purchase at such a
sale and obtain title as against his co-tenants, neither could
his agent. At the time this land was sold the rents were
sufficient to pay the taxes. It was George L. Peabody's
duty, as the agent of his father, the same as it was his
father's, to apply these rents to the payment of the taxes.
When the certificate of tax sale was assigned by George
L. Peabody to his mother she was then a co-tenant of ap-
pellants, and could not, through the tax deed issued there-
after to her, acquire color of title against such co-tenants.

Counsel for appellee further insists that she can base
her claim of color of title upon the will of her mother-in-
law, Lucinda D. Peabody. A will, the same as a deed, may
be color of title. (*Baldwin* v. *Ratcliff, supra.*) A devise
of all lands belonging to the testator in this State will by
that general description pass to the devisee title to all such
lands belonging to the testator at the time of his death,
but such devise will not constitute color of title under the
Limitation law. (*Holbrook* v. *Forsythe,* 112 Ill. 306.)
The will must furnish a sufficient description to identify
the land, (*Waterman Hall* v. *Waterman,* 220 Ill. 569,)
without recourse to other writings. The will of Lucinda
D. Peabody did not in any way identify this property, and
therefore does not constitute color of title under section 6
of the Limitation law. This court, in discussing the ques-
tion when the possession of one co-tenant may be regarded
as adverse to the others, has repeatedly stated that it is not
sufficient that he continues to occupy the premises and ap-
propriate to himself the exclusive rents and profits, makes
slight repairs and improvements on the land and pays the
taxes, for all this may be consistent with the continued
recognition of the rights of his co-tenants. To constitute

a disseizin there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them. (*Ball* v. *Palmer,* 81 Ill. 370; *Sontag* v. *Bigelow,* 142 id. 143; *McMahill* v. *Torrence,* 163 id. 277; *Boyd* v. *Boyd,* 176 id. 40; *Blackaby* v. *Blackaby,* 185 id. 94; *Long* v. *Morrison,* 251 id. 143.) Possession and payment of taxes, however long continued, will not, alone, constitute a bar, under the statute, as against a co-tenant. (*McMahill* v. *Torrence, supra,* and cases cited.) The proof to establish adverse possession must be clear and positive. (*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430; *Kirby* v. *Kirby,* 236 id. 255.) To sustain an ouster of a co-tenant the evidence must be stronger than to sustain ordinary adverse possession. (*Lambert* v. *Hemler,* 244 Ill. 254; *Nickrans* v. *Wilk,* 161 id. 76.) Whether notice of adverse and hostile possession has been given is a question of fact which is often difficult to determine. (*Boyd* v. *Boyd, supra.*) An entry by a grantee of one tenant in common under a conveyance which purports to convey the whole estate, not acknowledging the right of any other person in the land, amounts to an ouster of co-tenants and the possession of the grantee is adverse to them. (*Steele* v. *Steele,* 220 Ill. 318; *Waterman Hall* v. *Waterman, supra.*) It is not necessary that any positive notice should be given. Any acts by the co-tenant in possession which are so overt, notorious and unequivocal as to show adverse and hostile possession are usually deemed sufficient. (*Holley* v. *Hawley,* 39 Vt. 525; *Warfield* v. *Lindell,* 30 Mo. 272; Freeman on Co-tenancy and Partnership,—2d ed.— sec. 230.) Exclusive possession by tenants in common under claim of title for forty years, while their co-tenants resided in the same county and failed to assert any claim to their property, has been held sufficient to warrant the

presumption of an actual ouster. *Jackson* v. *Whitbeck*, 6 Cow. 632.

Counsel for appellee contends that appellants had ample means of knowing of the existence of this land through family connections and associations, as most of them lived at Salem, Massachusetts, through the fact that administration was necessary on the estate of Ezra Peabody, the inventory and appraisement therein indicating the interest in this land; the notice of administration posted and printed at Salem; the written request of the mother of Ezra Peabody and his sister, Christiana Goldthwait, that administration on said estate be granted to Brackley R. Peabody, and the notice given for the probate of Christiana Peabody's will. Counsel for appellants claim that none of these things were sufficient to give notice of adverse or hostile possession; that Christiana Goldthwait died September 15, 1854, two months before the appraisement in Ezra Peabody's estate was filed, and that therefore there was no presumption, from her having signed the petition, that she knew of the land in Illinois; that one of the other sisters died four years prior to Ezra Peabody, and that the other sister did not sign the petition for administration of the estate and the record does not disclose that she had any knowledge concerning the administration. They further contend that although Christiana Peabody died in 1857 her will was not probated until 1874, after all her children were dead; that such will does not specifically describe this real estate, and that the inventory filed in the estate of Ezra Peabody did not refer to this as real estate but only as a land warrant. They further contend that Brackley R. Peabody and his heirs have shown no moral right to the title; that if Ezra Peabody was indebted to Brackley R. Peabody the latter should have filed his claim against the estate, and that said Brackley made no report as administrator.

George L. Peabody, the husband of appellee, stated that he knew as to the condition of the title, but never talked with or attempted to inform any of appellants as to their interest in this property. He denies, however, that he attempted to conceal the knowledge of the land from any of his relatives, stating that he was in Salem, Massachusetts, very little for many years until he retired and returned there to live, a few years before the beginning of this litigation. The burden was on appellee to establish all the material facts necessary to sustain her contention, by a preponderance of the competent evidence, that her possession was hostile, actual, visible, notorious, exclusive, continuous and under claim of title. (*Clark* v. *Jackson,* 222 Ill. 13.) In some way co-tenants must be given notice that an adverse possession and an actual disseizin are intended to be asserted against them, in order that the statute may commence to run. In *Sontag* v. *Bigelow, supra,* it was held that if a tenant in common takes actual possession of land, continues to occupy the same, appropriating to himself the rents and profits, pays the taxes for more than seven years and does nothing to apprise his co-tenant that he claims to be the owner of the entire premises, such possession will not be adverse. The same holding was made by this court, after reviewing the authorities, in *Donason* v. *Barbero,* 230 Ill. 138. The authorities chiefly relied on by counsel for appellee, such as *Lavalle* v. *Strobel,* 89 Ill. 370, *Dugan* v. *Follett,* 100 id. 581, *Littlejohn* v. *Barnes,* 138 id. 478, *Kotz* v. *Belz,* 178 id. 434, and *Steele* v. *Steele, supra,* were all cases where there was an ouster by a deed of the entire property from a co-tenant to a stranger, or it was proven that there was knowledge on the part of the other co-tenants that the co-tenant in possession was claiming to hold the same adversely. Tested by the rules of law governing this question, we think it is manifest that appellee has failed to make proof that the hostile and adverse possession was brought to the knowledge of appellants. Their

claim to the interest in one-half of this land is therefore not barred by the twenty year Statute of Limitations as to adverse possession.

Appellee strenuously insists that appellants' claim should be barred because of *laches*. All statutes of limitation are based on the theory of *laches*. (*Mettler* v. *Miller*, 129 Ill. 630.) It is an essential element of *laches* that the parties charged with it should have knowledge. (*Wright* v. *Stice*, 173 Ill. 571.) As a general rule, where the statute has fixed the period of limitation under which a claim in a court of law will be barred, courts of equity, by analogy, will adopt the limitation thus fixed, but they will often adopt a less period as a bar on the ground of discouraging stale claims or gross *laches* or unexplained acquiescence in the assertion of an adverse right. (*Bates* v. *Gillett*, 132 Ill. 287.) It is only when the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that the *laches* will bar his right within the statutory period. (*Compton* v. *Johnson*, 240 Ill. 621, and cases cited.) If the record showed that appellants had knowledge of this land and the facts upon which appellee bases her claim of title, then *Genz* v. *Genz*, 254 Ill. 161, relied on by the appellee, would be in point. Counsel for appellee contends that under the holding of this court in *Smith* v. *Clark*, 248 Ill. 255, she must be held to be an innocent third party obtaining the land in good faith. She is not an innocent third party as that term is used in that case. She holds this land as the devisee of her mother-in-law, having paid no consideration therefor, and has not expended money in improvements or taxes in excess of the rents received. On the contrary, she has received rents largely in excess of all costs and taxes. From this record there can be no claim of any prejudice resulting to appellee by reason of the non-action of appellants.

The decree of the circuit court held that the rights of the heirs of Ezra Peabody in this land, which vested in

them at his death, had become lost by reason of *laches* and the Statute of Limitations. The facts in this record do not sustain either of these findings.

The decree of the circuit court will therefore be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*