GRAYLING LUMBER COMPANY *v.* EBBITT.

Opinion delivered May 13, 1918.

1. VENDOR AND PURCHASER—FALSE REPRESENTATIONS.—Under the evidence, a finding that defendants were, to their damage, induced to purchase certain lands by false and fraudulent representations is sustained by a preponderance of the evidence.

2. VENDOR AND PURCHASER—FALSE REPRESENTATIONS OF ANOTHER.— A vendor will be liable to a purchaser for damages resulting to the latter, growing out of a sale induced by the false representations of a third party, when the vendor participates in the fraud, or with knowledge adopts and takes advantage of it. It is not necessary that the relation of agency exist between the vendor and third party.

3. VENDOR AND PURCHASER—FALSE REPRESENTATIONS OF A THIRD PARTY.—The purchaser of land was induced to do so by the false representations of a third party, but it also appeared that the vice president of the vendor company was present when the third party represented falsely the value of the lands, and asserted that it was a good investment. *Held,* the company was bound by the false representations of the third party.

Appeal from Desha Chancery Court; *Zachariah T. Wood,* Chancellor; affirmed.

*Jack Bernhardt* and *Samuel Frauenthal,* for appellant.

1. The appellees purchased the west half of section 13 and by mistake described it in the deed as the east half.

2. There were no false or fraudulent representations by appellant. Hoyt was appellees' agent and not appellant's. 57 Fed. 753; 6 Cyc. A. 539; 53 Ark. 208; 105 *Id.* 446. Agency can not be established by statements of the alleged agent to third parties nor by his acts and declarations. 33 Ark. 251; 44 *Id.* 213; 46 *Id.* 228; 85 *Id.* 252; 96 *Id.* 505: 93 *Id.* 600. Appellant is not responsible for any fraudulent representations of Hoyt as he was not its agent. 12 R. C. L. 399, § 149.

3. The preponderance of the testimony shows that Hoyt really made no false or fraudulent representations to appellees; but if so he acted solely as agent of the appellees.

*E. E. Hopson* and *J. W. & J. W. House, Jr.*, for appellees.

1. False and fraudulent representations on the part of appellant were fully proven and they were material.

2. The warranty was broken by the assessment for drainage purposes. 65 Ark. 498.

3. If Hoyt was the agent of appellees he exceeded his authority in the transaction.

4. Appellant must come into equity with clean hands. Scott was an officer of appellant and was present when Hoyt made the representations. 2 Pom. Eq. (3 ed.) par. 902. A trust was placed by appellees in Hoyt and Scott knew the facts and should have spoken. Both Scott and Hoyt represented that they knew the value of the land and they are bound by their representations. 71 Ark. 91; 2 Pom. Eq. 1617. Appellant is bound by Scott's knowledge.

5. Appellees knew absolutely nothing of the value of the land. The land was really worthless to them. Bad faith and false representations were proven. 2 Pom. Eq. (3 ed.) 1670, 1730. The chancellor was clearly justified in his findings.

6. On the cross-appeal judgment should have been rendered against Hoyt.

HUMPHREYS, J. Appellant, Grayling Lumber Company, instituted suit against appellees in the Desha chancery court to reform a deed executed by it on November 30, 1914, to said appellees, so as to convey the west half of section 13, township 13 south, range 2 west, instead of the east half thereof. The complaint alleged in substance that the deed in question was a quitclaim deed executed to appellees until it could obtain a release of the west half of said section from a mortgage it had theretofore executed to the Security Trust Company, at which time it had agreed to execute a warranty deed for the west half of said section to said appellees; that it secured said release and executed the warranty deed on February 5, 1915, to appellees, properly describing the

land intended to be conveyed as the west half of said section, township and range.

Appellees answered admitting that they had received both deeds, thinking they described the same property and that no mistake was made in describing the land in the quitclaim deed, as it was the intention of appellant to convey the east half instead of the west half of said section to them. Appellees, by way of cross-bill, alleged that appellant and C. B. Hoyt had effected the sale of the lands, which were worthless, to them through false representations and asked for a rescission of the sale and a personal judgment against appellants, Grayling Lumber Company and C. B. Hoyt, and for a lien on said lands to secure the judgment. Appellants, Grayling Lumber Company and C. B. Hoyt, filed separate answers, denying that the sale of said lands was procured through false representations made by them and that the lands were worthless.

The cause was submitted upon the pleadings, depositions, exhibits and stipulations of counsel, from which the court found that appellees were induced to buy the west half of said section, township and range, through the false and fraudulent representations made to them by the Grayling Lumber Company and C. B. Hoyt; that said appellees were entitled to a rescission of the sale; and that the quitclaim deed to the east half of said section was an error. Based upon those findings, a decree was rendered canceling the deeds and a personal judgment was rendered against Grayling Lumber Company for the purchase money paid it, together with interest thereon, and taxes paid by appellees on said lands for the year 1915, from which decree an appeal has been prosecuted by the Grayling Lumber Company and C. B. Hoyt to this court.

The weight of the evidence is to the effect that the land described in the quitclaim deed was an error and should have been the west half instead of the east half of section 13, township 13 south, range 2 west, and, as appellees do not seriously contend otherwise, it is un-

necessary to set out the substance of the evidence on that issue.

It is impractical to set the evidence out in detail, but the material parts thereof, responsive to the issues of whether or not appellants, through false and fraudulent representations, induced appellees to buy the land to their damage, as detailed by the respective witnesses, is in substance as follows: Margaret Ebbitt testified that she and her sister invested all their earnings in the land, upon the representations of her friend of twenty-five years' standing, C. B. Hoyt, to the effect that the land was susceptible of cultivation, could be cleared for about $12 per acre, was near Arkansas City and suitable for a home; that the taxes were nominal; that he had paid more for adjoining lands no better; that they could place their land and his under one management and farm it to great advantage. Testifying further, she said Mr. Hoyt informed them he had bought lands in Arkansas, and, being interested in his description of the lands, her sister asked him if he could not purchase some lands for them adjoining his; that he agreed to investigate the matter and make an effort to do so; that early in November, 1914, she was called up by her sister, who was housekeeper at the Great Northern Hotel in Chicago, and informed that Mr. Hoyt was there and wanted to see her; that she went over and found Mr. Scott and Mr. Hoyt in her sister's room; that Mr. Scott said it was a "good thing," "that is a good investment," and as he left, remarked that he was going to be her neighbor; that as a result of the conversation Mr. Hoyt went to Detroit to try to buy the land and reported that he succeeded but had difficulty in buying it for $12 an acre; that they gave him the money and, later, received a quitclaim deed, thinking it was the only deed they were to receive, and still later received the warranty deed which had been recorded by the company before sending it to them; that she explained to Mr. Hoyt in the beginning that she and her sister had saved their money to buy a home and that he assured her he had bought lands for this purpose and he was interesting other friends and

that they would be neighbors, and that the lands could be placed under one management for cultivation; that Mr. Hoyt represented them in the transaction.

Catherine Ebbitt's testimony did not materially vary from the evidence of her sister.

J. H. Fuquay, Frank Ramus, George E. James and B. O. Zellner, all residents of Desha County and familiar with the lands, testified that the west half of section 13 was west of Clay Bayou, or the canal, and north of Keleen ditch, and that all the land except a small acreage near the ditch is low and covered with sloughs, bayous and ravines, and wholly unfit for cultivation; that the east half of section 13 has a public road across it and is above water, but that the west half of the section is swamp land, inundated most of the time, and that, since the canal has been cut, the west half of the section could not be reached any time in the year by public road; that the canal would have to be bridged at a large expense to make the land accessible to Arkansas City, that it would cost from $25 upward per acre to clear the land; that all virgin timber has been cut and that the land is practically worthless.

S. W. Whitthorne, engineer for Cypress Creek Drainage District, in which the land is located, testified that the lands in their present condition are not susceptible to cultivation, but that when Cypress Creek Drainage District is closed in and Ditch No. 81 is completed the lands will be susceptible to cultivation, except in times of extraordinary rains.

B. A. Scott testified that he was vice president of Grayling Lumber Co. when the sale was made, and that he executed the deed to appellees for the company; that he and Mr. Hoyt came down to Arkansas in the early part of November, 1914, and on the way back Mr. Hoyt told him that the Ebbitt girls wanted to buy a part of section 13 and asked if they could get it; that he answered "if they want to purchase it you can go ahead and ask Filer of the Board and see if they will let it go." Mr. Scott continuing his testimony said: "When we got back to Chicago, as I remember, we were in Catherine Ebbitt's

room at the Great Northern Hotel—she was housekeeper there—and she called for her sister. She came over. As I recollect, she asked me what I thought of the investment in these lands, and I said it was good; I intended to purchase some myself and clear up a farm there, and Mr. Hoyt had the plat, and he showed her that he owned the east half of section 13, and he wanted them to buy the west half. There was no mention of going down there to live, in my recollection, other than when they had a bungalow they would go down there once in a while for a vacation." Continuing, Mr. Scott said, that the land was represented as being about two or two and a half miles from Arkansas City. Mr. Scott also testified that the land was worth $12 per acre when the sale was made; $15 per acre when he gave his deposition and would be double that value in about two years when the levee will be closed in and the land properly drained. He also testified that he did not urge the ladies to buy the land, and that he was not a party, directly or indirectly, in overreaching them in the sale, and that Mr. Hoyt was not the agent or representative of the Grayling Lumber Co. in the transaction.

Mr. C. B. Hoyt testified: That he bought the east half of section 13 for $8 an acre on January 31, 1913, and that he frequently talked about the investment in the presence of appellees, who had confidence in his friendship and judgment; that the conversation inspired the request by Miss Catherine to invest their earnings in Arkansas lands, against which he advised, and led to a conference in Miss Margaret's room in the Great Northern Hotel in Chicago. He was finally authorized by the sisters to buy the west half of section 13 for them if he could get it; that he was acting for them and not the Grayling Lumber Company in the purchase of the land, and that while he spoke of being their neighbor, and of others buying adjoining land, and of the lands being placed under a joint management, there was nothing said about them living on the land, and that he would not have advised them to buy it for a home; that their conversations per-

tained entirely to the proposition as an investment; that the only representations made to them about the character of the land were that it was as good as the east half of the section that he had bought; that he was not acquainted with the value of lands in that section of Arkansas; that he knew nothing about the rate of taxation on the lands; that he did not tell them that the lands were in a levee and drainage district, but did inform them, on one occasion, the lands overflowed; that his sole purpose was to befriend them and make a good investment for them, and that he had no intention of defrauding them.

J. C. Spry, a lumberman and land agent in Chicago, who had inspected the lands and who was familiar with lands in that section, testified that the market value of the land was $15 an acre at the time he was testifying, and that $12 was cheap for them when the sale was made.

It was agreed that prior to the sale the lands in question were included in Cypress Creek Drainage District and ten cents per acre per annum was assessed against it for twenty-five years, and that thirty-year payment bonds in the sum of $300,000 were sold by the Board prior to the sale, and constituted a first lien on the lands involved in the suit.

We think it shown by a preponderance of the evidence that C. B. Hoyt represented to appellees that the west half of section 13 could be cleared up for $12 an acre and put in cultivation; that it was a short distance from Arkansas City and would make a suitable home for them; that the taxes were nominal, and it was a good investment for them. We also think it is shown by the weight of evidence that the land was a swamp, inaccessible, unfit for habitation, not susceptible to cultivation, of little value and subject to a levee district tax in addition to the general county and State taxes. The evidence further shows that appellees had no opportunity to inspect the lands and that they bought the lands wholly and entirely upon representations made to them as to its character and value.

It is insisted by appellant, Grayling Lumber Co., that it is not bound by the misrepresentations, if made, because C. B. Hoyt was the agent of appellees, and not its agent. It is not necessary for the relationship of agency to exist between a vendor and the party inducing or procuring the sale of lands through fraud and deceit in order to warrant relief against the vendor. A vendor will be held liable if he participates in the fraud; or if he had knowledge of the fraud and adopts or takes advantage of it. 12 R. C. L., p. 399, sec. 147. B. A. Scott was vice-president of the Grayling Lumber Company. He knew of the relationship existing between appellees and C. B. Hoyt. He knew they had no opportunity to inspect the lands and if the sale were made it would be upon representations as to the character and value of the lands. He knew the land was inaccessible to Arkansas City on account of the canal, and that it was covered with bayous, ravines and sloughs; that it was without value as a timber proposition; and that it was not susceptible to cultivation at that time; that it was an unfit place for women to reside; that Hoyt had a map and was explaining where he had bought and where he wanted them to buy; that the purpose of the conference was to sell the west half of section 13 to appellees. In response to a direct question he told them it was a good thing and advised that it would be a good investment, and in order to impress that fact upon them said that he intended to buy some of the land and open up a farm himself. The opportunity was afforded him to explain the condition and character of the land to appellees, but he failed to do so, and permitted his company to accept their money and himself executed the deed for his company to them. The company is bound by the knowledge and action of its vice-president who was present at the conference which resulted in appellees authorizing C. B. Hoyt to purchase the land. The company must be regarded as having taken advantage of the fraudulent misrepresentations of C. B. Hoyt in inducing the sale.

The chancery court did not render a personal judgment against C. B. Hoyt, and appellees prayed a cross-appeal, and urge that the court erred in failing to give them a personal judgment against him. Upon examination of the record, it appears that a supersedeas bond has been filed and that C. B. Hoyt is a surety thereon, so we deem it unnecessary to discuss this feature of the case.

No error appearing in the record, the judgment is affirmed.