## HANS ZIMMERMAN *v.* CHARLES D. GROLLE, FRED L. DE BOER AND ERNESTINE DE BOER.

### No. 2669.

ARGUED AUGUST 11, 1948.            DECIDED SEPTEMBER 22, 1948.

KEMP, C. J., PETERS AND LE BARON, JJ.

218

OPINION OF THE COURT BY PETERS, J.

This is a suit in equity to set aside the foreclosure of a mortgage affected by the statutory method of entry and possession upon the ground of fraud committed jointly by the respondents, Grolle as agent of the petitioner and by the respondents de Boer as assignees of the mortgage and foreclosing mortgagees, and for an accounting of the net rents, issues and profits of the mortgaged premises by the respondent Grolle as such agent from September 18, 1942, to the date of foreclosure, and by the respondents de Boer as constructive trustees for the petitioner from the date of foreclosure to the date of suit.

Respondents filed a joint demurrer to the bill, which was overruled. Those grounds of demurrer which were assigned as error in this court are (a) that the remedy at law against respondent Grolle for an accounting of the rents collected by him for the mortgaged premises from September 18, 1942, to date of foreclosure was adequate; (b) that the petitioner's bill is multifarious in that the respondent Grolle is not involved in the foreclosure; that two sets of accounts are prayed from different respondents and that the basis of the claim against Grolle is breach of a fiduciary relationship while that against the de Boers is fraudulent foreclosure; (c) that the statutory right of redemption was barred by reason of lapse of time and foreclosure had become final; and (d) failure upon the part of petitioner to make a tender within the statutory period of redemption.

Respondent Grolle filed a separate answer and respondents de Boer filed a joint answer.

After trial had, the circuit judge granted the relief prayed and decree was entered accordingly. From the final decree respondents prosecuted a joint appeal.

Assuming but not deciding that upon the joint appeal of the respondents the errors specified to the overruling of the demurrer are joint, we are of the opinion that the demurrer was correctly overruled.

It appears from the complaint that the mortgage, the validity of the foreclosure of which is the primary subject of attack, is dated October 4, 1941, was executed by the petitioner, as mortgagor, to the Bank of Hawaii, Limited, a banking corporation, as mortgagee, with the written consent of the respondent Grolle as sublessor of the premises mortgaged, and was given to secure the payment by the mortgagor of his promissory note to the mortgagee of even date in the sum of $2000, payable within two years after date with interest until fully paid at six per

cent per annum net above taxes, payable monthly; that said note was conditioned that monthly installments should be paid on account of principal in sums of not less than $100 each on the 15th day of December, 1941, and on the same date in each and every month thereafter; that the property assigned by way of mortgage to the bank was a sublease from the respondent Grolle to the petitioner dated August 18, 1941, for a term of nineteen years and nine months from March 1, 1941, of lot 12, block 14, Kaialiu subdivision, as delineated on Bishop Estate map 3211 and filed in the office of said estate, together with improvements thereon consisting of a seven-room hollow tile and plaster structure designed as a clinic for the use of the petitioner in his profession as a licensed natureopathic physician, of the estimated value of $12,000; that the reserved rental under the sublease was $150 payable in equal installments of $75 each in advance on the first day of December and the first day of June in each and every year during its continuance without deduction; that under its terms the lessee was obligated to pay when and as the same became due and payable all taxes, rates, assessments, impositions, duties and charges and other outgoings of every description to which the premises or the sublessor and sublessee in respect thereof were or might during the term of said sublease become liable; that the sublease was not assignable without the written consent of the sublessor; that under the terms of the mortgage the mortgagor among other things was obligated to observe and perform all of the covenants and conditions of the said sublease; that the mortgage expressly.authorized foreclosure upon default by bill in equity, the statutory methods of entry and possession and with or without entry and possession by advertisement and sale at public auction; it also provided that the mortgagor until default might hold and enjoy the mortgaged property and receive the rents and profits there-

of; that on June 16, 1944 (after maturity), the Bank of Hawaii, Limited, endorsed the said promissory note of October 4, 1941, without recourse in blank and at the same time assigned the mortgage given by the petitioner to it as security for the payment thereof to the respondents de Boer; that at time of the assignment no payments had been made on account of the principal of said promissory note and interest had only been paid up to August 15, 1942; that the consideration paid by the de Boers to the Bank of Hawaii for said note and mortgage was the sum of $2643, the excess over and above principal and interest being apparently for expenses of the abortive foreclosure by the bank hereinafter referred to; that on August 17, 1944, the de Boers as the owners and holders of said note and assignees of the said mortgage to the Bank of Hawaii, Limited, foreclosed the said mortgage by entry and possession pursuant to the provisions of Revised Laws of Hawaii 1945, sections 12429 to 12431, both inclusive.

It appears further from the bill of complaint that on or about September 18, 1942, petitioner requested respondents to administer, manage and protect his property consisting of said leasehold premises, subject to said sublease of August 18, 1941, and said respondents agreed to administer, manage and protect the same by leasing it and applying the proceeds of such rentals to the payment of interest and principal on petitioner's note and mortgage to the Bank of Hawaii, and the rental payments, taxes, etc. to petitioner's lessor, the respondent Grolle, under said sublease and insurance premiums; that the respondents falsely and fraudulently conspired to rent the petitioner's premises and to convert the proceeds thereof to their own use, and did falsely and fraudulently conspire to obtain petitioner's property by assignment to the respondents de Boer of the said note and mortgage and by foreclosure of said mortgage, to falsely and fraudulently attempt

to deprive petitioner of his right, title and interest in said property; that in furtherance of said false and fraudulent plan, scheme and device respondents in the middle of the year 1942 and thereafter rented the petitioner's said premises as a dwelling and collected the rents and converted them to their own use, and in furtherance of their false and fraudulent plan, scheme and device, although they well knew that interest and payments of principal were due the Bank of Hawaii on account of the said note and mortgage, failed to make any payments on account thereon, although they had sufficient monies rightfully belonging to petitioner with which to make such payments; that no payments on interest or principal were made on account of said note after August 15, 1942; that the respondent Fred L. de Boer, though well knowing that the rents collected as aforesaid were sufficient to pay the interest on the aforesaid note and mortgage, negotiated with the Bank of Hawaii and on, to wit, June 16, 1944, purchased from the bank the said note and mortgage with the fraudulent intent to deprive petitioner of the ownership of the mortgaged premises, and that said purchase of said note and assignment of the mortgage was made with the knowledge of said respondents Grolle and Ernestine de Boer; that in furtherance of their false and fraudulent plan, scheme and device to deprive petitioner of his said property, the respondents de Boer on, to wit, August 17, 1944, foreclosed the said mortgage of October 4, 1941, by the statutory method of entry and possession; that at the time of said attempted foreclosure petitioner's property was valued at approximately $20,000, which the said respondents well knew; that the respondents de Boer had sufficient funds as rentals from petitioner's property to pay the interest on said mortgage and note and that the attempted foreclosure was void and of no effect, the same being in fraud of petitioner's right of ownership therein; that the respond-

ents acting in a fiduciary capacity and as agents of the petitioner, could have rented the petitioner's premises as business property instead of as a dwelling and thereby could have obtained average rentals amounting to from $150 to $200 a month, but in furtherance of their fraudulent scheme, plan and device rented said premises at a grossly inadequate sum of $63 per month, later after foreclosure raised to $75 per month, and that although requested by petitioner on many occasions, the respondents have refused and still refuse to give petitioner an accounting showing the receipts and expenditures on account of their management of petitioner's premises.

The allegations of the bill are, in our opinion, sufficient to entitle petitioner to complete relief in equity including an accounting against each of the respondents. It alleges in substance a fraudulent breach by the respondents of the fiduciary relation they bore to the petitioner as their principal; a fraudulent conspiracy between them to deprive the petitioner of his property; the consummation by the conspirators of their fraudulent design and the deprivation of the petitioner of his property and the net rents, issues and profits accrued therefrom from the time of the inception of the agency relationship to the time of suit; the present ownership in two of the fiduciaries of the petitioner's property; the possession by all of the conspirators of rents collected from said property for which they are liable to account to the petitioner, and finally the refusal by all to account. This is enough to warrant the imposition of equity.

The relation created between the petitioner and the respondents as alleged in the bill of complaint was not the mere principal-agent relationship without more. It was a fiduciary relationship, one in which confidence was reposed by the petitioner in the respondents and the matters for which an accounting is sought are peculiarly

within the knowledge of the latter. Under the circumstances equity has jurisdiction to take an account.[1]

Moreover, where a fiduciary relation exists the primary right is equitable, and the remedy of accounting is a necessary incident and part of the relief granted. "The fact that there is a legal remedy is not a criterion."[2] The concurrent jurisdiction of equity is sufficient to grant complete relief and establish purely legal rights.[3]

Nor is the petition multifarious. The fiduciary relation sustained by the respondents to the petitioner was joint; the alleged fraud was jointly conceived and jointly exerted against the petitioner. "One general right only is claimed by the bill although the defendants may have separate and different interests therein." That different details of the fraud were the concern of individual respondents is immaterial. The circumstances of the relief is joint against all. That the accounts by reason of the assignment of the mortgage may involve different times and only one or less than all of the respondents is not a consideration requiring the rejection of the bill.[4]

The statutory authority for the foreclosure of mortgages by entry and possession is contained in Revised Laws of Hawaii 1945, sections 12429 to 12431, both inclusive, quoted in the margin.[5] Appellant argues that such foreclosure is conclusive against fraud by the mortgagees

---

[1] 4 Pomeroy, § 1421, p. 1079.

[2] 1 Pomeroy, § 180, p. 254.

[3] 1 Pomeroy, § 181; 2 Story §§ 616-625; Kawananakoa v. Puahi, 14 Haw. 72; Fong Dai Kim Ah Leong by Amoy Zen v. Lau Ah Leong, 28 Haw. 581.

[4] Ohera v. Ackerman, 9 Haw. 597; Castle Estate v. Haneberg, 20 Haw. 123; Bertlemann v. Lucas, 28 Haw. 1; Fung Dai Kim Ah Leong by Amoy Zen v. Lau Ah Leong, *supra*.

[5] "Sec. 12429. How made. After breach of the condition, if the mortgagee, or any one claiming under him, is desirous of obtaining possession of the premises for the purpose of foreclosure, he may proceed in either of the following ways, viz.:

against the mortgagor and that upon the expiration of the statutory period of redemption the defrauded mortgagor is remediless. With this contention we cannot agree. Where as here it is alleged that the foreclosure was affected by the fraud of the mortgagees exerted against the mortgagor, the period of redemption is not exclusive. Equity may grant the mortgagor relief against fraud upon timely application by him therefor even after the period of redemption has expired.[6]

Holding as we do that foreclosure by the statutory method of entry and possession is not conclusive against fraud after an elapsion of the period of redemption, an offer to reimburse and to do equity is sufficient. A tender is unnecessary.[7]

The appellants contend that no conspiracy existed to defraud the petitioner of his property, nor that he was de-. frauded of his property as a result of any conspiracy; that to constitute a conspiracy there must be "a combination

"1. He may enter into possession and hold the same by consent in writing of the mortgagor or the person holding under him.

"2. He may enter peaceably and openly, if not opposed, in the presence of two witnesses and take possession of the premises, in which case a certificate of the fact and time of such entry shall be made and signed and sworn to by the witnesses before any judge of a court. The written consent or the certificate shall be recorded in the bureau of conveyances. No such entry shall be effectual unless such certificate or consent in writing shall be recorded within thirty days next after the entry is made.

"Sec. 12430. Expenditures by mortgagee. The mortgagee in possession is authorized to make such expenditure as is necessary to carry on the estate or to keep the same in good condition, giving credit for the income. The balance shall be placed in the account for or against the estate, as the case may be, if the mortgagor makes a tender for redemption.

"Sec. 12431. Redemption barred, when. Such possession obtained in either of the two modes above described being continued for the term of one year shall forever foreclose the right of redemption."

[6] Holman v. Ryon, 56 F. (2d) 307.

[7] Stout v. Thomas, 221 Ala. 675, 130 So. 189.

of two or more persons intentionally participating in furtherance of a preconceived common design and purpose"; that "The mere fact that each of several defendants acted illegally or maliciously with the same end in view does not constitute a conspiracy, unless such acts were done pursuant to a mutual agreement. * * * The mere knowledge, acquiescence, or approval of the act, without co-operation or agreement to co-operate, is not enough to constitute one a party to a conspiracy. There must be intentional participation in the transaction with a view to the furtherance of the common design and purpose.[8]

Upon the trial of the case below petitioner as a witness on his own behalf repudiated the allegations contained in the bill of complaint that all three respondents were appointed by him as his agents as alleged in the bill and admitted that on September 18, 1942, and thereafter the relation of principal and agent existed between himself and the respondent Grolle alone. Otherwise than in this particular the petitioner's case developed consistently with the allegations of the bill. And the trial judge in her decision found the facts as alleged in the bill except as to the agency agreement of September 18, 1942, and as to it found that Grolle was the sole agent of the petitioner for all the purposes declared.

Whether or not, however, the conduct of the respondents condemned by the trial judge constituted overt acts done by them in execution of a fraudulent conspiracy existing between them, we deem unnecessary to the determination whether the relief granted by the decree is inconsistent with the facts found by the trial judge. If the respondent Grolle was guilty of fraud as alleged and the respondents de Boer with knowledge of the fraud turned it to their own advantage and profit they are equally guilty with

---

[8] 15 C. J. S. tit. Conspiracy, § 2, pp. 997-998.

Grolle, irrespective of whether a conspiracy existed between them and Grolle to bring about the results attained. The trial judge found that on September 18, 1942, the respondent Grolle "undertook to act as agent for petitioner in managing petitioner's property for him, and as such agent undertook and agreed either to occupy petitioner's building and pay the ground rent, taxes and charges on the property and make the necessary payments on petitioner's mortgage, or to rent said building and make said payments from the rent received therefrom, which latter alternative he assumed," and that the respondent Grolle "stood in the fiduciary relationship to petitioner as such agent." The finding has ample evidence for its support and we see no reason to disturb it.

It is true that the evidence upon the subject of the duties imposed upon the agent under the agency agreement was conflicting. The respondents admitted that by the terms of the agency agreement Grolle was obligated in the event that he rented the building to apply the gross rentals to the discharge of the rent reserved under the sublease, taxes and other charges, including insurance, but deny that it also included the duty to apply any portion of the gross rentals to the interest or principal of the note and mortgage of the petitioner to the Bank of Hawaii. If it were in the contemplation of the parties that the gross rentals to accrue might be in excess of the petitioner's obligations under his sublease and this contingency must have been in the minds of the parties (the rentals proved to be in excess of such obligations during the period that the premises were rented), it is strange that the agency agreement was silent upon the disposition of any excess that might accrue. Certainly it could not have been intended that any excess that might arise be retained by Grolle indefinitely. It is unreasonable to believe that the obligations of the petitioner under his sublease were the

only ones considered by him and Grolle at the time that the agency was created to the exclusion of the petitioner's obligations to the bank. The trial judge also found that the respondent Grolle on December 10, 1942, after making substantial repairs upon the building on the leased premises rented the same and the tenancy continued until the month of February, 1945, first at a rate of $63 a month and after foreclosure of $75 a month; that respondent Grolle failed to answer petitioner's letter of inquiry as to his administration of the property and to the inquiry of a friend of petitioner in February or March, 1943, Grolle informed him, the friend, "that the building was rented for a sum sufficient to keep up all payments and expenses"; that "this statement was deliberately misleading" and intended "to mislead the petitioner into believing the charges on his sublease and mortgage were being paid by Grolle in accordance with his agency and agreement with petitioner"; that respondent Grolle collected rents on the premises as the same accrued so that in June, 1944, when the negotiations were opened by the de Boers with the Bank of Hawaii for the purchase of the petitioner's note and mortgage due the bank, respondent Grolle had in his possession belonging to the petitioner net rents after the payment of all the charges due upon the leasehold, cost of alterations and repairs of the building, ground rents, taxes and sewer assessments, "a balance to the credit of petitioner" of "a sum sufficient to have paid the then accrued interest on the mortgage * * * in full and the sum of $72.08 on account of principal," and that the respondent Grolle "retained the rentals received from petitioner's building, depositing them * * * in his own account and deliberately refrained from making for petitioner the payments upon petitioner's obligations as he had agreed to do and thereafter took advantage of his wrongdoing and [in] violation of his agency and trust." Whether or not

this situation was the result of design or of negligence on the part of Grolle is immaterial. It constituted a breach of trust, both actual and constructive, for the direct and proximate result of which the respondent Grolle is liable.

The trial judge also found that at the time of the inception of negotiations between the de Boers and the bank for the purchase by the former of the petitioner's note and mortgage there was pending proceedings by the bank for the foreclosure of the petitioner's mortgage by the statutory method of advertisement and sale at public auction; "that the Bank of Hawaii is known throughout the Territory as a conservative institution" and that had the respondent Grolle "disclosed to the bank the fact that the petitioner's property was rented for a sufficient sum to pay the accrued and current interest and make substantial payments on account of principal, and with regard to the value of the security, the foreclosure of said mortgage would have been further delayed and petitioner enabled to refinance or otherwise take care of his obligations and protect his property," and that the respondent Grolle neither "at the time of purchase of the petitioner's mortgage by the de Boers" nor at any time at all disclosed "to the bank that he had been acting as petitioner's agent for the collection of rents and the payment of charges against petitioner's property or that he had any monies to petitioner's credit in his possession nor attempted in any way to pay the interest due or to obviate the foreclosure." If under these circumstances the respondent Grolle instead of the respondents de Boer had acquired the note and mortgage of the petitioner to the bank and foreclosed the same under circumstances similar to those employed by the respondents de Boer, petitioner's remedy against Grolle would be complete. A constructive trust would arise in favor of petitioner enforceable against

Grolle.[9]  That the respondent Grolle did not do so, but fraudulently assisted the de Boers with full knowledge of the fraud to do so, placed the de Boers in identically the same position.

The trial judge found that "the close connections existing between the respondents form [with other considerations] the background of and throw light upon the acts complained of"; that "In December, 1940, the respondents [de Boer] * * * who knew and had maintained close friendly relations with respondent Grolle, moved into his home with him"; that the respondents during all times mentioned in the bill of complaint lived together in a dwelling house adjoining lot 12, the subject of the sublease from respondent Grolle to petitioner; that "a warm friendship existed" between the respondent Grolle and the respondents de Boer, the former "who has no close relations" came to regard the de Boers "with a great deal of affection, looked upon them as his family, and stated his intention of devising his entire estate to their baby daughter"; that the respondent Ernestine de Boer was present on September 18, 1942, when the petitioner appointed the respondent Grolle his agent and declared the terms of authority conferred and the duties imposed; that upon occasion the respondents de Boer as well as Grolle accepted rent of the tenant of the premises on lot 12; that both of the respondents de Boer were fully cognizant of respondent Grolle's dealing of the property as agent of the petitioner; that the respondent Ernestine de Boer knew the principal sum of the mortgage, was present when the agency agreement between petitioner and the respondent Grolle was entered into and was fully aware of its terms and the respondent Grolle's obligations thereunder; that both the de Boers knew of the sublease from the

---

[9] Grumley v. Webb, 44 Mo. 444.

respondent Grolle to petitioner, knew Grolle was managing petitioner's property for him as his agent and was collecting rents therefrom for petitioner's account and knew the amount of such rentals; that the respondents de Boer knew of respondent Grolle's failure to apply any of the rents of the petitioner's premises to his mortgage; that after the acquisition of the mortgage by the respondents de Boer the respondent Grolle continued with their knowledge and consent to collect the rents on the petitioner's premises and continued to do so until their foreclosure by entry.

An examination of the evidence would convince any reasonable person that the relations existing between the respondents were very close; that the management of the petitioner's property by the respondent Grolle was a frequent subject of discussion and that respondents de Boer knew that the collections by the respondent Grolle of rents were sufficient to pay the current interest on the petitioner's obligations to the Bank of Hawaii and to make some payment on account of principal. The evidence is overwhelming in support of the conclusion that the proximate cause of the institution of foreclosure proceedings by the bank and the ultimate discontinuance of those proceedings and the assignment of the note and mortgage to the respondents de Boer was the negligent or willful failure of respondent Grolle to make any payment on account of the note and mortgage. Under the circumstances the respondents de Boer are chargeable with the constructive and actual fraud of which the respondent Grolle was guilty, and they must be held to be constructive trustees of the premises acquired by them under foreclosure for the benefit of the petitioner.

The conclusion is inevitable that the assignment to the de Boers of the petitioner's mortgage to the bank was induced by Grolle's breach of trust in failing to apply any

of the rents collected by him from the mortgaged premises to the note for which the mortgage was given as security, and that by his fraudulant concealment from the bank of his ability to make such application of monies in his possession belonging to petitioner the assignment of the note and mortgage to the de Boers was made possible; that the de Boers were cognizant of Grolle's breach of trust and his concealment of the facts from the bank; and that the de Boers ratified and adopted Grolle's fraud to their own advantage and profit to the extent that the leasehold and improvements thereon were of a value in excess of the consideration paid for the assignment. The de Boers were not innocent purchasers without knowledge. If Grolle instead of the de Boers had acquired the mortgage, under the circumstances Grolle would have held the same upon the constructive trust for the benefit of the petitioner, and had he transferred the same to the de Boers with full knowledge of the facts, such transfer would not have cut off the constructive trust. The result is the same where the fraudulent person induces a transfer to another. The de Boers therefore are constructive trustees of the property for the benefit of the petitioner.[10]

The defense of laches was raised both upon demurrer and at the trial below. It has not, however, been specified as error, nor has it been argued in appellants' opening brief. Hence the question is not before this court upon this review.

The decree appealed from is affirmed.

C. A. Gregory (Smith, Wild, Beebe & Cades, also on the briefs) for appellants.

W. C. Tsukiyama (also on the brief) for appellee.

---

[10] Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262, 94 S. W. 527; Veazie v. Williams, 8 How. (U. S.) 134; Grayling Lumber Co. v. Ebbitt, 134 Ark. 175, 203 S. W. 686; U. S. v. Carbon County Land Co., 46 F. (2d) 980, aff'd 284 U. S. 534; Peabody v. Burri, 255 Ill. 592, 99 N. E. 690.