WILLIAM W. STEELE *et al.*

*v.*

JAMES STEELE *et al.*

</div>

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. LIMITATIONS—*when statute will run as between co-tenants.* If one tenant in common holds exclusive possession claiming the land as his own, in such a manner as to give notice to the other co-tenants that his possession is adverse, the Statute of Limitations will run as against the other co-tenants.

2. SAME—*sale of entire title by one co-tenant, followed by possession, amounts to an ouster.* A sale and conveyance of the whole title to a tract of land by one tenant in common, followed by possession by the grantee, amounts to an ouster or disseizin of the other co-tenants, and after the period fixed has lapsed, the Statute of Limitations will bar their action or entry.

3. SAME—*what does not prevent running of Statute of Limitations.* The fact that complainants in partition did not know their father held the legal title to the land at the time of his death until after the Statute of Limitations had run in favor of the defendants

does not entitle them to relief, where they were under no disability, the possession of the defendants was open and notorious, and there was no fraud, concealment or misrepresentation as to complainants' rights by the parties in possession, none of whom occupied a fiduciary relation to the complainants.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. C. H. DONNELLY, Judge, presiding.

MILFORD J. THOMPSON, and ORVIS & EDWARDS, for plaintiffs in error.

CHARLES WHITNEY, and COOKE, POPE & POPE, for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The controversy in this case is in relation to the title to the undivided three-fourths of the west half of the southeast quarter of section 30, town 44, range 12, in Lake county. Plaintiffs in error are the surviving heirs-at-law of Andrew Steele, who died intestate on August 1, 1854, leaving eight children, who were all minors of from about two to fourteen years of age, three of whom afterward died intestate, without issue. Andrew Steele and his three brothers, William Steele, Jr., Matthew Steele and James Steele, were in partnership under the firm name of William Steele & Bros. or William Steele & Co., and the partnership owned different tracts of real estate. In 1845 the United States issued a patent to Andrew Steele for the eighty-acre tract in question, but the patent was not recorded in Lake county. He was never in possession of the land, but it was occupied during his lifetime by two of his brothers. He lived on the east half of the same quarter section, the legal title to which was in James Steele, and James Steele lived on the south half of this tract. James Steele built a house on said south half of the tract in question about 1847, and was in possession of

that part until he sold it; as hereinafter stated. Matthew Steele built a house in 1847 on the north half of the tract, and went into possession of that part and retained possession until he sold and conveyed it. An administrator of the estate of Andrew Steele was appointed, but died, and William Steele, his father, was appointed administrator *de bonis non* on May 10, 1856. William Steele, the grandfather, and William Steele, Jr., uncle of the minor children of Andrew Steele, were appointed guardians for them on May 7, 1855, and on May 28, 1855, they filed their petition in the county court of Lake county for leave to sell the real estate belonging to said minors for the purpose of supporting, educating and schooling them. The guardians, by their petition, set forth that the minors owned the undivided one-fourth of various tracts of land, including the one now in controversy, and alleged that they had no other property, real or personal. The legal title to some of the tracts was in William Steele & Co., the title to some was in Andrew Steele, and to others in Matthew Steele or James Steele. The court ordered a sale of the undivided one-fourth of all the lands, and a sale was made and this property was bought by James Steele. A deed was executed, dated in 1856, but it was not recorded until 1872. On April 15, 1882, James Steele made a deed, for an expressed consideration of $100, for the north half of the tract to Matthew Steele, who had been in possession of it since 1847. Matthew Steele, on December 16, 1885, sold and conveyed said north half to William J. Steele with another tract, in consideration of $3600, and William J. Steele has had possession of the same ever since, except three acres east of the highway which he conveyed to James Steele, Jr., on August 27, 1887. James Steele, Jr., took possession of the three-acre tract and has continued in possession. James Steele occupied the south half until November 16, 1882, when he deeded it to Henry Vickerman in consideration of $47.50 per acre, and Vickerman took possession in 1884 and has ever since re-

sided thereon. William J. Steele and Henry Vickerman have paid all taxes on the property conveyed to them since 1885, and James Steele, Jr., has paid the taxes on the three-acre tract since 1887. Plaintiffs in error filed their bill for partition of the eighty-acre tract, alleging that they owned an undivided three-fourths thereof, and that the defendants in error owned an undivided one-fourth by title derived from the guardians' sale. The bill alleged that the legal title was in Andrew Steele at his death; that such title descended to the complainants as heirs-at-law, and that they still held the same except as to the one-fourth sold by their guardians. James Steele, the purchaser at the guardians' sale, filed a disclaimer. By their answers Henry Vickerman claimed to be the owner of the south forty, William J. Steele claimed title to thirty-seven acres of the north forty, and James Steele, Jr., claimed title to the remaining three acres. They also set up title under the Statute of Limitations of seven years by payment of taxes and possession under claim and color of title acquired in good faith, and claimed the benefit of the twenty years limitation, based upon adverse possession by themselves and their grantors for over fifty years prior to the commencement of the suit. The issues were referred to a special master in chancery, who took the evidence of the parties and returned it to the court with findings of fact substantially as above set forth and a recommendation that the bill be dismissed for want of equity. Exceptions to the report were overruled and a decree was entered finding the facts in accordance with the report, and the bill was dismissed at complainants' cost.

It is first contended that there was not sufficient evidence that the tract of land belonged to the four brothers or to the partnership. There is no direct evidence on the subject, which is not remarkable, considering the fact that more than fifty years have elapsed since the partnership came to an end. Any conclusion on the subject must be to some extent conjectural, but it is quite certain that the property was treated

by all the brothers as joint or partnership property, and not as the individual property of Andrew Steele, who held the legal title. Andrew Steele was never in possession of it, while his two brothers built houses on it and occupied it, one the north half and the other the south half. At the same time Andrew Steele lived on another tract, the legal title to which was in James Steele. After the death of Andrew Steele all the lands were treated as partnership property. That was done both by the inventory of Andrew's estate and the inventory and petition of the guardians. At the same time that it was alleged that the minors had only one-fourth interest in this property, it was conceded that they had a like interest in the other property. While a one-fourth interest in this property was sold as the property of the minors, an undivided one-fourth of other lands, the legal title to which was in James Steele and Matthew Steele, was sold as their property and they received the benefits of the proceeds of such sales. There was evidence tending to show that the tract was partnership property, although the legal title was in Andrew Steele.

But whatever the fact was as to the equitable title to the land, the action was barred by statutes of limitation. Henry Vickerman and William J. Steele had been in possession and paid all taxes under claim and color of title acquired in good faith for fifteen years before the commencement of the suit, and James Steele, Jr., had been in possession of the three-acre tract for thirteen years under like claim and color of title and had paid the taxes. A sale and conveyance of the whole title to a tract of land by one co-tenant, followed by adverse possession, amounts to an ouster or disseizin of the other co-tenants, and the Statute of Limitations will bar their action or entry. (*Goewey* v. *Urig,* 18 Ill. 238.) There is no dispute of the facts that said defendants purchased and paid for the property and received conveyances of the same, and have been in the open, notorious and exclusive possession of the premises for the period

stated. Said defendants and their grantors had also been in the open and exclusive possession of the premises for more than thirty years after the youngest complainant reached her majority, and during all that time applied the rents and profits to their own use and treated the property in all respects as their own, and such facts constituted a complete defense under the twenty-year statute of limitations, unless there is some valid reason why a statute of limitations can not apply.

It is insisted, however, that statutes of limitation are not applicable to this case for two reasons: First, that complainants and defendants are tenants in common, complainants owning an undivided one-fourth and the defendants an undivided three-fourths of the property, and that the possession of one tenant in common cannot be adverse to his co-tenant; and second, that complainants were ignorant of their title to the property and their rights until shortly before filing their bill, in 1900. It is the general rule that statutes of limitation do not run as between tenants in common, for the reason that the possession of one tenant is, in contemplation of law, the possession of all; but if, as a matter of fact, the possession of one is adverse to the other, a right of action may be barred or title may be acquired under a statute of limitations. If one tenant in common holds exclusive possession, claiming the land as his, and his conduct and possession are of such a character as to give notice to his co-tenant that his possession is adverse, the Statute of Limitations will run. (*Lavalle* v. *Strobel,* 89 Ill. 370; *Littlejohn* v. *Barnes,* 138 id. 478; *Kotz* v. *Belz,* 178 id. 434.) The possession of the present owners and their grantors was of such a character as to give notice that they claimed exclusive ownership and denied any right or title in any other person. The running of the statute was not prevented by the fact that complainants did not know their father held the legal title at the time of his death, until after the action was barred. They were, at the time of filing the

bill, adults, and the youngest of them had reached her majority more than thirty years before that time. There was no concealment, deceit or misrepresentation as to the rights of complainants by any parties in possession, and none of them occupied any fiduciary relation toward the complainants. The possession was notice to all the world of the claim to the property of the persons in possession, and if the complainants did not learn of their rights it was purely through their own neglect and inattention to their property, and they are consequently entitled to no immunity on that account. (*Conner* v. *Goodman,* 104 Ill. 365.) There is no view of the case in which the bill could have been maintained, and the court did not err in dismissing it.

The decree is affirmed.

*Decree affirmed.*