**The GATES RUBBER COMPANY, a corporation, Plaintiff-Appellant,**

v.

**USM CORPORATION, a corporation, Defendant-Appellee.**

No. 73–1325.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1974.

Decided Jan. 6, 1975.

Rehearing Denied Feb. 12, 1975.

Before CUMMINGS and STEVENS, Circuit Judges, and GRANT, Senior District Judge.*

STEVENS, Circuit Judge.

The principal question presented by this diversity case is whether to follow a line of Illinois appellate court decisions which are directly in point, or to treat three recent Illinois Supreme Court decisions as presaging a different result because they have eroded the basic rule on which the appellate court decisions rested.

---

* Senior Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

Defendant pleads the Illinois five-year statute of limitations[1] as a bar to plaintiff's claim for damages resulting from the failure of a lead extrusion press installed in plaintiff's Galesburg plant in early 1964. The failure occurred on July 23, 1968, and this action, alleging negligence in the design, manufacture and installation of the press, was filed on March 16, 1971. The district court[2] entered summary judgment for defendant, holding that the claim was barred by limitations because (1) the cause of action accrued at the time of the alleged negligence, rather than at the time the claim was first discovered, and (2) plaintiff's affidavits and depositions contained no evidence of fraudulent concealment on the part of the defendant that would toll the running of the limitations period. The district court also held that the plaintiff's claim for consequential damages was precluded by a provision in the contract between the parties. Since the outcome of this diversity case is controlled by Illinois law, we preface our analysis of the legal questions with a statement of those facts which we believe the Illinois Supreme Court might consider important if confronted with the unresolved question raised by this appeal.[3]

I.

In 1963 the parties entered into a contract providing for the construction, sale and delivery of a large press which plaintiff (Gates) intended to use in the manufacture of high pressure industrial rubber hose. The terms of sale were set forth in a written proposal dated October 20, 1962 (as modified by subsequent correspondence) submitted by defendant's predecessor in interest and orally accepted by Gates on March 28, 1963; the contract was formed when Farrel[4] began construction pursuant to Gates' oral acceptance.

The express warranties in the contract expired "one year after date of shipment." The agreement expressly negated any implied warranties, and further provided that the seller should have no liability for any special, indirect or consequential damages. The agreement did not, however, contain any provision purporting to exculpate the seller from any liability for direct damage resulting from its negligence in the design, manufacture or installation of the press.

Although there is no evidence of any discussion between the parties about the anticipated useful life of the press, each apparently expected it to function effectively for about 20 years. It failed some four years after the date of shipment; three years later, following negotiations between the parties and with insurance adjusters, this action was commenced.

In its complaint, Gates alleged that the failure of the press caused direct damage to its property of $67,000 and consequential damages resulting from interruption of production of $650,000. No damages for personal injury were claimed. Two different theories of liability were alleged: in Count I plaintiff relied on a negligence theory; in Count II plaintiff added an allegation that the press was in a defective and unreasonably dangerous condition when it left USM's control and therefore sought recovery on a strict liability theory. Count II was later abandoned by plaintiff.[5]

1. Ill.Rev.Stat.1973, ch. 83, § 16.

2. The court's opinion is reported at 351 F.Supp. 329 (S.D.Ill.1972).

3. We regret that Illinois has not established a procedure, as has Indiana, which would enable us to obtain definitive answers to the questions of Illinois law from the tribunal with final authority to answer those questions. *See* Wecker v. Kilmer, 471 F.2d 782 (7th Cir. 1972). *Cf.* Hendrickson v. Sears, 495 F.2d 513 (1st Cir. 1974). The United States Supreme Court has expressed approval of the certification procedure. Lehman

Brothers v. Schein, 416 U.S. 386, 390–391, 394–395, 94 S.Ct. 1741, 40 L.Ed.2d 215.

4. In 1968 Farrel-Birmingham Company, Inc. was merged with USM Corporation. Hereinafter, the defendant will be identified solely as USM.

5. In an amended complaint plaintiff added a Count III charging that USM had fraudulently misrepresented facts relating to the design of the base. Plaintiff has not appealed the ruling of the district court entering summary judgment on Count III.

Before turning to the legal questions we note certain matters that are not in issue. First, as the case comes to us, it involves no claim for personal injuries and no claim that the press was an unreasonably dangerous item. Second, there is no claim that the seller breached the contract or that there is any provision in the contract which affords the seller a complete defense to the purchaser's negligence claim. Third, the dispute is between the immediate parties to the transaction; no rights of third parties are at stake. Finally, we have no occasion to identify the difference between a manufacturer's failure to use reasonable care in the performance of his contractual responsibilities and his possible breach of his contract. For the purposes of our decision we assume that the purchaser of a defective product, whose claim is not barred by limitations, may recover from his seller on a negligence theory even though there has been no breach of contract or warranty, express or implied. Our first problem is to determine when a purchaser's cause of action against a seller, alleging negligent design, manufacture, and installation, "accrued" within the meaning of the relevant statute of limitations.[6] Does such an action accrue at the time of defendant's negligence, at the time of plaintiff's injury, or at the time when plaintiff discovers, or by the exercise of reasonable diligence should have discovered, his claim?

The last alternative is often referred to as the "discovery rule." Plaintiff contends, in essence, that the discovery rule is, or should be, applicable to all negligence claims; defendant responds, in essence, that Illinois has adopted a double standard pursuant to which the dis-

covery rule is applicable to personal injury claims, whereas a time of negligence rule is applicable to property damage claims.

## II.

Defendant relies on six Illinois appellate court decisions which are undeniably in point.[7] In each of those cases the plaintiff first became aware of his injury more than five years after he acquired defective property from the defendant; in each the appellate court held that plaintiff's cause of action had accrued at the time of the defendant's alleged negligence and refused to adopt the so-called "discovery rule." If those cases correctly apply the law of Illinois, plaintiff's claim in this case is clearly barred.

■ As plaintiff points out, however, the Illinois Supreme Court has applied the discovery rule in three recent cases: first, in Rozny v. Marnul, 43 Ill.2d 54, 250 N.E.2d 656 (1969), a property owner's action against a surveyor who had placed an "absolute guarantee for accuracy" on an incorrect plat of survey; second, in Williams v. Brown Manufacturing Co., 45 Ill.2d 418, 261 N.E.2d 305 (1970), a strict liability action for personal injuries resulting from the operation of a trencher which was allegedly in a defective and dangerous condition when it left defendant's control; and third, in Lipsey v. Michael Reese Hospital, 46 Ill.2d 32, 262 N.E.2d 450 (1970), a patient's action for medical malpractice. In none of these cases did the Supreme Court purport to adopt the discovery rule as a general definition of the word "accrued" in the Limitations Act, or even a general rule to be applied in all negligence or in all personal injury cases.

---

6. Ill.Rev.Stat.1973, ch. 83, § 16 provides that: "[A]ctions . . . to recover damages for an injury done to property, real or personal, . . . shall be commenced within 5 years next after the cause of action accrued."
The statute applicable to actions to recover damages for injuries to the person is similar except the relevant period is two years instead of five years. Ill.Rev.Stat.1973, ch. 83, § 15.

7. Coumoulas v. Service Gas Incorporated, 10 Ill.App.3d 273, 293 N.E.2d 187 (1973); Board of Education v. Perkins & Will Partnership, 119 Ill.App.2d 196, 255 N.E.2d 496 (1970); Wilson v. White Motor Corp., 118 Ill.App.2d 436, 254 N.E.2d 277 (1969); Sabath v. Morris Handler Co., 102 Ill.App.2d 218, 243 N.E.2d 723 (1968); Board of Education v. Joseph J. Duffy Co., 97 Ill.App.2d 158, 240 N.E.2d 5 (1968); and Simoniz Co. v. J. Emil Anderson & Sons, Inc., 81 Ill.App.2d 428, 225 N.E.2d 161 (1967).

It did, however, refuse to accept arguments which the appellate courts found persuasive in the cases on which defendant relies. This, therefore, is not a situation in which we may simply rely on intermediate appellate court decisions because they are most analogous to the case before us. They provide us with data for ascertaining the relevant Illinois law, but may be disregarded if we are "convinced by other persuasive data that the highest court of the state would decide otherwise." West v. American Telephone and Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139.

The first of the appellate court decisions on which defendant relies is Simoniz Co. v. J. Emil Anderson & Sons, Inc., 81 Ill.App.2d 428, 225 N.E.2d 161 (1967). Plaintiff has convinced us that the Supreme Court would not have decided that case in defendant's favor on the basis of the reasons given by the appellate court. The case arose as a result of the collapse in 1962 of a warehouse roof constructed in 1953. The complaint contained seven counts, four charging breach of contract and three alleging negligence on the part of the general contractor, the structural steel subcontractor, and the steel supplier. The appellate court held that the negligence claims were barred because they accrued at the time of defendants' negligent acts; that the discovery rule had been rejected in earlier medical malpractice cases and, therefore, should also be rejected in this type of case; and that any redefinition of the word "accrued" was a matter for the legislature and not the

courts. Finally, the court expressed concern that a general acceptance of the discovery rule would, in effect, abrogate the entire statute of limitations and, at least in theory, permit actions to be filed as long as 50 or 100 years after the event in dispute.

The appellate court was incorrect in stating that the cause of action accrued at the time of defendants' negligence. That might be true if defendants' negligence and the plaintiff's injury were simultaneous (as, of course, is often the case); but if there is negligence in the design or manufacture of a product, plaintiff obviously suffers no harm until he accepts delivery of the defective item. His cause of action either accrues at the time of his injury when, for the first time, he has a right to sue, or when he first discovers, or should have discovered his injury.[8]

The principal authority on which the *Simoniz* court relied was Mosby v. Michael Reese Hospital, 49 Ill.App.2d 336, 199 N.E.2d 633 (1964), a case which has since been repudiated by both the Illinois General Assembly and the Illinois Supreme Court. In *Mosby* the appellate court had held that a cause of action for medical malpractice was barred by limitations even though commenced less than two years after the discovery of the foreign object which had been left in plaintiff's body during surgery four years earlier. The *Mosby* court characterized its own decision as inequitable and suggested that remedial legislation would be appropriate to save like claims in the future.[9] Thereafter the Illinois

---

8. "The principle, we understand, is, that the cause of action arises at the time the injury was done, and the statute begins to run from that day." Leroy v. City of Springfield, 81 Ill. 114, 115–116 (1876). *See also* Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 435, 176 N.E.2d 761, 763 (1961); Calumet Electric Street Railway Company v. Mabie, 66 Ill. App. 235, 238–239 (1896).

In this regard, we believe that, while the court in Klondike Helicopters, Ltd. v. Fairchild Hiller Corp., 334 F.Supp. 890 (N.D.Ill. 1971), correctly stated the Illinois law, it incorrectly applied it. The court held that, in

an action for damages to a helicopter that had crashed, the injury did not occur until the crash took place. We believe the correct conclusion under Illinois law should have been that the plaintiff was injured, for purposes of this property damage action, when he took possession of the defectively manufactured helicopter. Thus, Klondike's suit would have been timely only if a discovery rule were applied.

9. "We are not pleased with this result. The statute barred the plaintiff's claim before she knew she had been wronged. . . . It would be more equitable if the commencement of the limitation period were

legislature did amend the statute to permit malpractice claims based on negligent failure to remove all foreign objects after surgery to be filed within two years from the discovery of the claim, provided that in no event could such a claim be filed more than 10 years after the date of the wrong.[10] More significantly, in a later medical malpractice case not within the new statute, the Supreme Court applied the discovery rule. Lipsey v. Michael Reese Hospital, *supra*. It is therefore quite clear that even without the statutory amendment the Supreme Court would not have followed the principal precedent on which the *Simoniz* court relied.

Furthermore, in *Lipsey* the Supreme Court expressly rejected the argument that only the legislature may properly decide whether or not to apply the discovery rule in a particular type of case.[11] Thus, it disagreed with still another predicate for the *Simoniz* decision. Since the later appellate court decisions (cited in n. 7, *supra*) relied heavily on *Simoniz* and the reasons expressed therein, we think plaintiff is entirely correct in arguing that that line of cases should not be considered dispositive of this one. The fact that the reasoning of *Simoniz* and its progeny is unacceptable does not, however, lead inexorably to the conclusion that the Supreme Court would have reached a different result in those cases.

As we have already noted, in none of the recent Supreme Court decisions does the opinion purport to adopt a discovery rule of general applicability. Each opinion is written as though the Court assumes that a claim may accrue before the plaintiff discovers, or reasonably should have discovered, his injury, and therefore that even an "inherently unknowable" claim may sometimes be barred. Thus, in *Rozny* the court expressly noted that there are some situations in which "it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred." 250 N.E.2d at 664.

In each of the three cases the Supreme Court was careful to restrict its holding to the precise issue before it. Thus, in *Rozny* the Court did not even adopt a rule expressly applicable to all negligently prepared surveys, but instead stressed the unequivocal character of the surveyor's assurance of accuracy and held that the discovery rule applied to a "tortious misrepresentation" claim. 250 N.E.2d at 664. Under the Court's narrow analysis of the claim, the discovery rule might well have a quite limited application. At least the most recent appellate court decisions which have considered the point have so interpreted *Rozny* and held that it did not undermine *Simoniz*.[12]

delayed until she discovered the reason for her illness, but the statute does not permit the construction necessary to obtain this equitable result. Relief must come from the legislature and not from the courts." 199 N.E.2d at 636.

10. Ill.Rev.Stat.1973, ch. 83, § 22.1.

11. "Undeniably it is a judicial function to determine and follow, where it is not legally interdicted, the legislative intention. But we consider, contrary to the defendants' argument, that there has not been an expression by the legislature prohibiting an adoption of the 'discovery' rule. Responding to a similar argument in Berry v. Branner, 245 Or. 307, 421 P.2d 996, the Supreme Court of Oregon said at page 999, 'The contention is made that a decision of this kind amounts to judicial legislation. The legislature, however, did not provide that the time of accrual was when the physician performed the negligent act. This

court did. The legislature left the matter undetermined. A determination that the time of accrual is the time of discovery is no more judicial legislation than a determination that it is the time of the commission of the act.' " Lipsey v. Michael Reese Hospital, 46 Ill.2d 32, 262 N.E.2d 450, 454.

12. Although it is dicta, the following statement by Justice Seidenfeld in Coumoulas v. Service Gas Incorporated, 10 Ill.App.3d 273, 293 N.E.2d 187 (1973) significantly refers to *Rozny* and *Lipsey* as "carefully circumscribed cases":

"The 'discovery' rule, which has been applied in Illinois in carefully circumscribed cases, (See Rozny v. Marnul (1969), 43 Ill.2d 54, 250 N.E.2d 656; Lipsey v. Michael Reese Hospital (1970), 46 Ill.2d 32, 262 N.E.2d 450; Wigginton v. Reichold Chemicals, Inc. (1971), 133 Ill.App.2d 776, 274 N.E.2d 118; McDonald v. Reichold Chemicals, Inc. (1971), 133 Ill.App.2d 780, 274

In *Rozny,* however, the Supreme Court did provide us with a test for determining whether to apply the discovery rule which made it clear that the rule might be extended in later cases. It said:

> The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. . . . But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the right to sue. 43 Ill.2d at 70, 250 N.E.2d at 664.

The Supreme Court's second opportunity to confront the discovery rule came in Williams v. Brown Manufacturing Co., 45 Ill.2d 418, 261 N.E.2d 305 (1970), a case which is principally noteworthy for its holding that plaintiff need not allege and prove freedom from contributory negligence in an action to impose strict liability on the manufacturer of a product which was in a defective and unreasonably dangerous condition when it left his control. In that holding, which gives the plaintiff in a strict liability case a significant advantage not enjoyed by the plaintiff in an ordinary negligence action, the Court emphasized the need to provide special legal protection to the consumer who is unable adequately to protect himself from the risk of personal injury. As the court had previously emphasized in Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965), the leading Illinois case adopting the strict liability theory, rules which had been developed to meet the needs of commercial transactions were inadequate to afford the necessary consumer protection.[13] This history may be significant because, in explaining its holding on the limitations issue in the *Williams* case, the Supreme Court said:

> As pointed out in Rozny v. Marnul, 43 Ill.2d 54, 250 N.E.2d 656, the constitutionally established policy of providing a remedy for every wrong inflicted is tempered by the policy of the statute of limitations which bars actions brought after the period of time which the legislature has determined makes the problems of proof so difficult as to pose a danger of injustice. When interpreting the statute applicable here (Ill.Rev.Stat.1961, ch. 83, par. 15) we have held that an action to recover for personal injuries resulting from a sudden traumatic event accrues when plaintiff first knew of his right to sue,

N.E.2d 121) does not appear to have been extended to include the recovery of property damage due to negligence under circumstances similar to those before us." 293 N.E.2d at 189.

*See also* Board of Education v. Perkins & Will Partnership, 119 Ill.App.2d 196, 255 N.E.2d 496, 498–499 (1970).

13. In *Suvada* the Court stated:

"In analyzing the basis for the imposition of strict liability Justice Traynor, speaking for the California court stated, 'Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law [citations] and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products [citations] made clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by [its] defective products unless those rules also serve the purposes for which such liability is imposed.' (Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 63, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901.) We agree." 210 N.E.2d at 187.

*i. e.* at the time when the injury occurred. (Leroy v. City of Springfield, 81 Ill. 114; see Madison v. Wedron Silica Co., 352 Ill. 60, 62, 184 N.E. 901.) Although we have not specifically held this rule applicable to a products liability claim, (see Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 435, 176 N.E.2d 761) *refusal to so so would emasculate much of the consumer protection afforded by Suvada.*

261 N.E.2d at 312–313. (Emphasis added)

Thus, as in *Rozny,* the Court's application of the discovery rule was carefully limited to the specific claim before it. It is perhaps significant, however, that the Court's explanation of its holding implies that the discovery rule may properly be applied in other situations in which the risk of injustice resulting from the passage of time is minimized by the fact that evidence relating to the critical issue on which plaintiff has the burden of proof is generally in defendant's control. The Court stated:

> We recognize that a necessary element of plaintiff's case is proof of existence of the defective condition at the time the product left the seller's control, and that proof of that element may well involve events which occurred more than two years prior to the time suit is brought (as is the case here and was also true in Suvada v. White Motor Co., 32 Ill.2d 612, 613–614, 210 N.E.2d 182). Because plaintiff has the burden of proving this fact and because defendant is in the better position to know the condition of his product when it left his control,

adequate safeguards exist against injustices arising from the passage of more than two years time. We accordingly hold this action properly brought within the period allowable by the applicable statute. *Id.* at 313.

Thus, although the passage of time is likely to be accompanied by an increase in difficulty of proof in a strict liability claim against a manufacturer, the nature of the cause of action reduces any danger of injustice. This fact, coupled with the need to protect the consumer interests described in *Suvada,* led the Supreme Court to conclude that the balance set forth in *Rozny* favored the adoption of a discovery rule.

The Supreme Court's third application of the discovery rule was also limited to a particular kind of claim to which a number of other courts had already applied that rule. The holding in Lipsey v. Michael Reese Hospital was stated as follows:

> We extend the rule of time of discovery followed by us in *Rozny* and hold that, in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it. In this we join what Prosser has described as a "wave of decisions" favoring the rule of time of discovery. 262 N.E.2d at 455.

The wave of decisions which Dean Prosser had described was composed of medical malpractice cases.[14] With the possible exception of New Jersey, Iowa and Arizona,[15] we do not find any jurisdiction in which the discovery rule has been adopted for all tort claims, or even for all negligence claims.[16] Accordingly, al-

---

**14.** W. Prosser, Handbook of the Law of Torts 144 (4th ed. 1971).

**15.** *See* Diamond v. New Jersey Bell Telephone Co., 51 N.J. 594, 242 A.2d 622 (1968); New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419, 241 A.2d 633 (1968); Chrischilles v. Griswold, 260 Iowa 453, 150 N.W.2d 94 (1967); Nielson v. Arizona Title Insurance and Trust Co., 15 Ariz.App. 29, 485 P.2d 853 (1971).

**16.** Apart from the medical malpractice area, where the discovery rule has enjoyed its greatest acceptance, the rule has most often

been applied in other professional malpractice actions. *See* Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal.3d 176, 98 Cal. Rptr. 837, 491 P.2d 421 (1971) (attorney); Moonie v. Lynch, 256 Cal.App.2d 361, 64 Cal. Rptr. 55 (1967) (accountant); Edwards v. Ford, 279 So.2d 851 (Fla.1973) (attorney); Leonhart v. Atkinson, 265 Md. 219, 289 A.2d 1 (1972) (accountant); Steelworkers Holding Company v. Menefee, 255 Md. 440, 258 A.2d 177 (1969) (architect); Mumford v. Staton, Whaley & Price, 254 Md. 697, 255 A.2d 359 (1969) (attorney); Hendrickson v. Sears, 310

though the Supreme Court of Illinois has embraced the discovery rule on three separate occasions and unquestionably will do so in others,[17] it has not yet staked out the boundaries of the area in which it will be applied. It is therefore necessary to identify the factors which might tilt the scales one way or the other if a case such as this were presented to that court.

■ Preliminarily, it is useful to note that a statute of limitations effectuates two quite different policies. First, such a statute is intended to protect defendants from false or fraudulent claims that might be difficult to disprove if not brought until after relevant evidence has been lost or destroyed and witnesses have become unavailable.[18] Second, entirely apart from the merits of particular claims, the interest in certainty and finality in the administration of our affairs, especially in commercial transactions, makes it desirable to terminate contingent liabilities at specific points in time. It is this interest in finality which underlies the description of a limitations act as a "statute of repose."[19]

The separate character of the two policies which underlie statutes of limitations is graphically illustrated by the Illinois General Assembly's reaction to the medical malpractice cases, such as *Mosby,* involving foreign objects left in a patient's body after surgery. In 1965, it enacted a bifurcated statute providing:

> Whenever in the course of any . . treatment or operation, any foreign substance . . . is negligently permitted to remain within the body . . ., the period of limitation for filing an action for damages does not begin until the person actually knows or should have known of the facts of hurt and damage to his body; provided that no such action may be com-

N.E.2d 131 (Mass.1974) (attorney); and Kundahl v. Barnett, 5 Wash.App. 227, 486 P.2d 1164 (1971) (surveyor). *But see* Hood v. McConemy, 53 F.R.D. 435 (D.Del.1971) (attorney); Sosnow v. Paul, 43 A.D.2d 978, 352 N.Y.S.2d 502 (architect); Denzer v. Rouse, 48 Wis.2d 528, 180 N.W.2d 521 (1970) (attorney); and County of Milwaukee v. Schmidt, Garden & Erikson, 43 Wis.2d 445, 168 N.W.2d 559 (1969) (architect).

The discovery rule has also been applied in actions against a contractor for negligent construction of a home (Bradler v. Craig, 274 Cal.App.2d 466, 79 Cal.Rptr. 401 (1969)), and of a medical building (Med-Mar, Inc. v. Dilworth, 214 Pa.Super. 402, 257 A.2d 910 (1969)); against a phone company for negligent installation of underground cable (Diamond v. New Jersey Bell Telephone Co., *supra* n. 15); against a trust company for the negligent application of funds (Nielson v. Arizona Title Insurance and Trust Co., *supra,* n. 15); and against an insurance agent for the negligent insuring of a poor risk (United States Liability Insurance Co. v. Haidinger-Hayes, Inc., 1 Cal.3d 586, 83 Cal.Rptr. 418, 463 P.2d 770 (1970)).

Courts have refused to apply the discovery rule in actions against contractors for the negligent construction of a commercial building (Wellston Co. v. Sam N. Hodges, Jr., & Co., 114 Ga.App. 424, 151 S.E.2d 481 (1966); M. T. Reed Construction Co. v. Jackson Plating Co., 222 So.2d 838 (Miss.1969); Metal Structures Corp. v. Plains Textiles, Inc., 470 S.W.2d 93 (Tex.Civ.App.1971)); against a

bank for the negligent cashing of a check and delivery of proceeds (Adrian v. American Security & Trust Co., 211 A.2d 771 (D.C.App. 1965)); against a furnace installer for negligent installation (Jewell v. Price, 264 N.C. 459, 142 S.E.2d 1 (1965)); and in an action based on the negligent delivery of a defective truck (Beal v. General Motors Corp., 354 F.Supp. 423 (D.Del.1973)).

17. The Illinois Appellate Court has extended the discovery rule to include personal injury negligence actions. Wigginton v. Reichold Chemicals, Inc., 133 Ill.App.2d 776, 274 N.E.2d 118 (1971); McDonald v. Reichold Chemicals, Inc., 133 Ill.App.2d 780, 274 N.E.2d 121 (1971).

18. *See* Halberstadt v. Harris Trust & Savings Bank, 55 Ill.2d 121, 125, 302 N.E.2d 64, 66 (1973); Geneva Construction Co. v. Martin Transfer and Storage Co., 4 Ill.2d 273, 289–290, 122 N.E.2d 540, 549 (1954); Parmelee v. Price, 208 Ill. 544, 560, 70 N.E. 725, 730 (1904).

19. "Whatever may formerly have been thought to be the ground upon which these statutes are based, it is now quite generally conceded that their purpose was, and is, to compel the settlement of claims within a reasonable period after their origin. . . . ." 1 H. Wood, A Treatise on the Limitation of Actions at Law and in Equity 9 (2d ed. 1893).

*See also* Bell v. Morrison, 26 U.S. (1 Pet.) 351, 359–360, 7 L.Ed. 174; S.H.A. ch. 26, § 2–725 (Illinois Code Comment).

menced more than 10 years after such treatment or operation. Ill.Rev.Stat. 1973, ch. 83, § 22.1.

In the kind of case covered by this statute, the "wave of decisions" described by Prosser demonstrates that the objective of avoiding injustice to defendants could not justify an absolute bar on all such claims filed more than two years after the surgery. The 10-year proviso, however, indicates that the Illinois legislature concluded that, after an adequate time interval has passed, the separate interest in finality outweighs the interest in affording every plaintiff a remedy for his wrong. If we were to consider only the interests of a specific litigant, the case for a discovery rule after 10 years would be just as strong as after only two years have passed. Presumably, however, the statute reflects a judgment that such cases will be sufficiently infrequent to make it appropriate to subordinate the interests of those plaintiffs to the general interest in permitting physicians to limit the scope of their contingent liabilities, and thus their need to pay insurance costs which ultimately become a part of society's medical expense. The discovery rule permits justice to be done in particular cases; the absolute bar creates a true statute of repose after sufficient time has elapsed.

Although we are aware of other examples of bifurcated statutes of limitations,[20] most limitations acts do not differentiate between the two separate policies which they effectuate. For that reason, courts are sometimes required to choose between a construction which may either result in manifest injustice to a particular litigant, or else make the limitations bar virtually nonexistent to other litigants and potential litigants in

similar cases. We are faced with that kind of choice in this case. For there is manifest unfairness in holding that a purchaser's claim—whether for personal injury, property damage, or interruption of his business—arising out of a latent defect in a purchased machine can be barred even before it causes any known harm. The character of the injustice is comparable to that suffered by the patient of a forgetful surgeon. On the other hand, it is equally clear that the application of a discovery rule to all purchase transactions would dramatically enlarge the contingent liabilities of manufacturers and sellers and substantially eviscerate the statutory purpose of repose. We are confronted with almost equally unacceptable alternatives between which, unhappily, we must make a choice. Which policy would the Illinois Supreme Court regard as paramount in a case of this kind?

■ We start from the premise that Illinois has not engrafted the discovery rule on all of its limitations law. Otherwise the statutory authorization for tolling by reason of the defendant's fraudulent concealment would be entirely superfluous.[21] Moreover, the frequent dicta indicating that an unknown claim may be barred [22] and the narrow statement of the holdings in *Rozny, Williams* and *Lipsey* plainly indicate that the court has not yet adopted any all-encompassing discovery rule.

We next note that the relative significance of the two policies underlying any limitations act changes as the statutory period is lengthened or shortened. A short statute provides a stronger case for a discovery rule than a long one. For the probability of injustice resulting

---

20. Minnesota has adopted such a statute applicable to building construction cases. Suits must be commenced within two years of discovery of the latent defect but not more than 10 years after completion of the construction. Minn.Stat.Ann. § 541.051 (1974 Supp.). See Continental Grain Company v. Fegles Construction Co., Inc., 480 F.2d 793, 797 n. 5 (8th Cir. 1973). *See also* Developments in the Law—Statute of Limitations, 63 Harv.L.Rev. 1177, 1204 n. 238 (1950).

21. *See* Ill.Rev.Stat.1973, ch. 83, § 23. *See* Parmelee v. Price, 105 Ill.App. 271, 282 (1902).

22. Skinner v. Anderson, 38 Ill.2d 455, 458, 231 N.E.2d 588, 590 (1967); Jackson v. Anderson, 355 Ill. 550, 557, 189 N.E. 924, 927 (1934); Steele v. Steele, 220 Ill. 318, 323–324, 77 N.E. 232, 233–234 (1906); Conner v. Goodman, 104 Ill. 365, 368–369 (1882).

from the failure to discover meritorious claims unquestionably diminishes as the statutory period increases. Moreover, the risk that a defendant might be unable to refute an unfounded claim is greater when a prospective plaintiff is allowed a period of five years *after discovery* of his claim than when he must act within two years of discovery. Until a property damage claim is at least five years old (measured from the date the claim "accrued" in a traditional sense) there is no need for any discovery rule. And since the discovery rule would permit any claim which had been unknown for at least five years to be asserted within five years after discovery, the application of such a rule in property damage litigation—at least in the cases in which there is need for the rule—would always extend the period of limitations to more than 10 years after the event giving rise to the claim. It would thus give even greater protection to property damage claimants than to the victims of the forgetful surgeon, whose claims are irrevocably barred after 10 years.

We also note that Illinois has expressly recognized the special importance of attaching finality to commercial transactions. The statute of limitations applicable to a breach of any contract of sale covered by the Commercial Code states that "An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued," and that the "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." [23] The Illinois Comment on this code provision states that it "is in accord with prior Illinois decisions in other areas of the law that ignorance of a cause of action in no way affects the running of the statute of limitations," and that the rule is "based on a policy 'that commercial interests are

best served by quickly bringing finality to commercial transactions.' "

In commercial situations not covered by the Code, the Illinois Supreme Court has also recognized society's interest in having definite rules which enable businessmen to allocate foreseeable risks of loss. Thus, for example, in Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100 (1955), the Court construed an ambiguous lease provision to exonerate the lessee from responsibility for fire damage caused by his own negligence. The holding rested in part on the commercial desirability of avoiding a construction under which "it would be necessary for both parties to the lease to carry fire insurance if they are to be protected." 131 N.E.2d at 103. In his opinion for the Court, Justice Schaefer expressly rejected the distinction between liability in contract and liability in tort as having significance in appraising the commercial transaction between lessor and lessee.[24]

We are persuaded that the underlying policy considerations which favor certainty and finality in the conduct of commercial affairs are applicable to the purchase transaction which gave rise to this litigation. Certainly the risk that any item will fail after the expiration of contract warranties but before its anticipated useful life has ended is foreseeable; that risk may be covered by insurance or by a specific contractual provision. If an undiscovered, latent defect causes economic harm to the purchaser, it is equally harsh to enforce a contractual provision terminating warranty responsibility, a statute of limitations barring an action for breach of contract, or a similar bar to an action framed on a negligence theory.

■ We have assumed that there is a difference in law between a manufactur-

---

**23.** S.H.A. ch. 26, § 2–725(1), (2).

**24.** "There are areas of the law in which the distinctions between liability in contract and liability in tort may be significant, despite their remote and accidental origin.

We are not satisfied, however, that such distinctions are relevant in determining the meaning to be given to words used by laymen in defining their rights and obligations." 131 N.E.2d at 103.

er's breach of contract and his failure to use reasonable care in the performance of his contract that enables the plaintiff to state a cause of action on a negligence theory without alleging any breach of contract. We do not believe, however, that there is a sufficient difference between the two theoretical bases of recovery to justify the discovery rule in one situation but not the other. For in Illinois, at least when contracts between parties of relatively equal bargaining strength are being construed, the risk that a party will be guilty of negligence is treated like any other commercial risk that may cause harm to the other party to a commercial transaction.[25] In the evaluation of foreseeable commercial risks, Illinois seems to attach greater importance to the commercial interest in certainty than to the policy of deterring negligence. In this case, as in *Cerny-Pickas,* we think the Illinois Supreme Court would regard the theoretical basis for the claim, whether advanced in tort or contract, as less significant than the nature of the transaction which gave rise to it.

We do not assume that the Illinois discovery rule is confined to personal injury actions or to a statute of limitations shorter than five years. *Rozny* forecloses any such restriction on the rule. On the other hand, even after *Rozny, Williams* and *Lipsey,* the rule has

not been extended to cover all tort claims[26] or even all negligence claims.[27] In each of the three cases applying the discovery rule the Supreme Court has attached importance to special facts not present here. Two of the cases involved personal injuries; in all three there was a disparity between the parties which made the plaintiff especially vulnerable to the harm caused by the defendant.

In *Lipsey,* the plaintiff was a patient who suffered harm at the hands of his surgeon. Not surprisingly, the case has been followed in a case involving malpractice by an attorney.[28] But clearly the relationship between the manufacturer and the purchaser of a 2500 ton lead extrusion press differs from the attorney-client or the physician-patient relationship.[29] In *Williams* the plaintiff was a consumer and thus a member of the class for whom the *Suvada* doctrine was intended to afford special protection from harm caused by manufacturers of defective and dangerous products. Since the underlying rationale of *Williams* rests, in part, on the premise that the decision of personal injury cases should not be controlled by rules developed to serve the needs of commercial transactions, it would be anomalous to construe *Williams* as having fashioned a new rule for commercial transactions.

*Rozny* is the case which most strongly favors the plaintiff here; however, the

---

25. Cf. O'Callaghan v. Waller & Beckwith Realty Co., 15 Ill.2d 436, 437–438, 155 N.E.2d 545, 546 (1958); Jackson v. First National Bank of Lake Forest, 415 Ill. 453, 459–462, 114 N.E.2d 721, 725–726 (1953). Illinois, like many other states, refuses, however, to enforce exculpatory clauses between certain parties where public interest in the relationship or a disparity in bargaining power exists. See Campbell v. Chicago, Rock Island and Pacific Railway Co., 243 Ill. 620, 625, 90 N.E. 1106, 1108 (1910); Chicago and Northwestern Railway Co. v. Chapman, 133 Ill. 96, 105, 24 N.E. 417, 418 (1890); Tyler, Ullman & Co. v. Western Union Telegraph Co., 60 Ill. 421, 431–432 (1871). See generally W. Prosser, Handbook of the Law of Torts 442–445 (4th ed. 1971). And exculpatory clauses in certain cases may be rendered void and unenforceable by statute. See, e. g., Ill.Rev.Stat.1973, ch. 29, § 61.

26. See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 16 Ill. App.3d 709, 306 N.E.2d 549 (1973) (libel action).

27. See Wigginton v. Reichold Chemicals, Inc., 133 Ill.App.2d 776, 780, 274 N.E.2d 118, 121 (1971) (Dictum).

28. Kohler v. Woollen, Brown & Hawkins, 15 Ill.App.3d 455, 304 N.E.2d 677 (1973).

29. Many of the decisions from other jurisdictions that have adopted the discovery rule in legal malpractice actions have emphasized the fiduciary nature of the attorney-client relationship. See, e. g., Hendrickson v. Sears, supra n. 16; Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra n. 16.

Illinois appellate courts on two occasions have expressly rejected that case as authority for applying the discovery rule in a case such as this.[30] We think their refusal to extend *Rozny* was correct not merely because the *Rozny* decision placed heavy reliance on a subsequently-enacted statute pertaining to surveyors,[31] but also because the emphasis in the *Rozny* opinion on avoiding the creation of "potential 'liability in an indeterminate amount for an indeterminate time to an indeterminate class'" suggests that the Court would hesitate to extend the discovery rule to this type of case.[32] If litigation arising out of this commercial transaction is subject to that rule, we do not perceive a principled basis for limiting its application, since we are not persuaded that the Illinois Supreme Court would draw a distinction between negligent and non-negligent manufacturing defects, or a distinction between all tort claims and all contract claims.

█ We therefore hold that plaintiff's cause of action accrued at the time the defective press was installed in Gates' plant.

### III.

Alternatively, plaintiff contends that defendant fraudulently concealed the cause of action within the meaning of the Illinois Limitations Act.[33] Finding no evidence of any affirmative misrepresentation by USM, the district court entered summary judgment for defendant on this issue. The question, then, is whether the plaintiff's evidence created a material issue of fact which made summary judgment inappropriate.

█ It is settled that mere silence by a defendant does not constitute fraudulent concealment within § 23. An affirmative misstatement, is required.[34] Plaintiff contends that this requirement was met in this case by the statement in USM's proposal that the base of the press was designed for "low loading stress" when its engineers had already determined that the base was actually "fairly highly stressed."

The statement in the proposal was, of course, made before the contract was formed and, therefore, well before plaintiff's cause of action accrued. Nevertheless, if that statement was intended to conceal the cause of action, or was sufficient to provide the basis for a fraud action, it would apparently satisfy the Illinois requirement of an actual misrepresentation. *See* Campbell v. Vining, 23 Ill. 473 (1860); Athey v. Hunter, 65 Ill. App. 453 (1896); Bartalott v. International Bank, 14 Ill.App. 158 (1884).

Moreover, the record indicates that the same allegedly inaccurate statement was contained in a proposal which USM submitted to Gates for a third press purchased after the press involved in this litigation had been delivered. It seems clear, therefore, that this is not a case in which the charge of fraudulent concealment rests on nothing more than mere

---

**30.** See n. 12, *supra.*

**31.** The Illinois General Assembly had adopted a discovery rule for all negligently-made land surveys completed after July 26, 1967. Ill. Rev.Stat.1973, ch. 83, § 24g.

**32.** The quotation is from 250 N.E.2d at 661, where the Court is discussing Judge Cardozo's opinion in Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 174 N.E. 441 (1931). On the following page of the *Rozny* opinion the Illinois Supreme Court made the following additional comment on *Ultramares:* "Although the absence of privity may have been the stated reason for denying liability, it seems likely that the virtually unlimited and unknown potential responsibility of the defendant weighed heavily in the courts' thinking. (Some courts in addition to *Ultramares* candidly state this reason, *e. g.,* Anderson v. Boone County Abstract Co. (Mo.1967), 418 S.W.2d 123, 127.)" 250 N.E.2d at 662.

**33.** Ill.Rev.Stat.1973, ch. 83, § 23 provides:
"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

**34.** *See* Skrodzki v. Sherman State Bank, 348 Ill. 403, 407, 181 N.E. 325, 327 (1932); Sabath v. Morris Handler Co., 102 Ill.App.2d 218, 229–230, 243 N.E.2d 723, 729 (1968).

silence on the part of the defendant. We conclude that the district court erred in entering summary judgment in favor of the defendant for that reason.

We express no opinion on whether, after a trial of this issue, the evidence would support the fraudulent concealment contention, but we conclude that it was error for the district court to hold that no genuine issue of fact exists. We also express no opinion on whether it would be appropriate to conduct a separate trial of this issue or to have this issue determined at the same time that the entire case is tried.

### IV.

Since plaintiff may prevail on the fraudulent concealment issue, it is necessary to consider the argument that the district court erred in holding that the recovery of consequential damages is precluded by a provision in the contract between the parties.

 USM's proposal of October 20, 1967, contained the following provision:

> 7. We shall have no liability for any special indirect or consequential damages arising from loss of production or other losses owing to failure of machinery or equipment.

Since we have concluded that the district court was correct in finding that the contract between the parties was formed when the defendant began construction of the press pursuant to Gates' oral acceptance of USM's offer, this provision became a part of the parties' contract. It follows that Gates' subsequent attempt to condition its acceptance on the absence of any liability limitation was ineffective.

We also reject Gates' argument that the provision is inapplicable to negligence liability because it does not expressly refer either to "negligence" or to "fault." We do not read the Illinois authorities as requiring such a specific reference in order to limit negligence liability. As Mr. Justice Goldenhersh of the Illinois Supreme Court noted, in interpreting whether a contractual indemnity clause protected a party against his own negligence:

> The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions. Tartar v. Maxon Construction Co., 54 Ill.2d 64, 67, 294 N.E.2d 272, 273–274 (1973).

In each of the Illinois cases on which Gates relies, the court examined the exculpatory provision in light of the surrounding circumstances.[35] In none did the court require that the limitation of liability or exculpatory clause expressly refer to "negligence."

 Section 2–719(3) of the Uniform Commercial Code specifically provides for the limitation of consequential damages.[36] In interpreting that section in V–M Corporation v. Bernard Distributing Co., 447 F.2d 864 (7th Cir. 1971), we noted that

Section 2–719 was intended to encourage and facilitate consensual allocations of risks associated with the sale of goods. This is particularly true

---

**35.** Tartar v. Maxon Construction Co., 54 Ill.2d 64, 67, 294 N.E.2d 272, 273 (1973); Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp., 395 Ill. 429, 433, 70 N.E.2d 604, 607 (1947); Owen v. Vic Tanny's Enterprises, 48 Ill.App.2d 344, 346–347, 199 N.E.2d 280, 281 (1964); Moss v. Hunding, 27 Ill. App.2d 189, 193, 169 N.E.2d 396, 399 (1960).

Judge Morgan found, and we agree, that Illinois was the state having the most significant contacts with this cause of action. In construing the legal effect of USM's limita-

tion of liability, we are, therefore, applying Illinois law.

**36.** Section 2–719(3) provides in part:

Consequential damages may be limited or excluded [by agreement of the parties] unless the limitation . . . is unconscionable. Ill.Rev.Stat.1973, ch. 26, § 2–719(3). We agree with Judge Morgan's conclusion below that there is no reason to read a negligence exception into the plain language of this section.

where commercial, rather than consumer sales are involved. 447 F.2d at 869.

Thus, in determining whether a limitation of negligence liability is effective, we do not believe the Illinois courts would require the same degree of specificity in commercial transactions that they might in a consumer context. We think that reasonable businessmen would read the provisions of the USM proposal as limiting liability for negligence.

Paragraph 7 of the USM proposal referred broadly to consequential damages "owing to failure of machinery or equipment." In paragraph 5 of the proposal, USM had specifically limited its liability and remedies for breach of warranty.[37] Paragraph 7 would be superfluous, therefore, if it were read as merely referring to warranty recovery. The most logical interpretation of paragraph 7 is that USM was limiting its liability for consequential damages that might be sought in suits based on theories other than breach of warranty. We hold, therefore, that Gates was properly apprised of the fact that the USM proposal contained a limitation of consequential damage liability that would apply in any subsequent negligence action.

Finally, Gates contends that its acceptance of the USM proposal containing the limitation of liability provision was induced by fraud. Fraud in the inducement would give Gates the right to avoid the entire contract, *see, e. g.,* Eisenberg v. Goldstein, 29 Ill.2d 617, 623, 195 N.E.2d 184, 187 (1964), but unless the fraud related directly to Gates' acceptance of the limitation of liability provision, we do not believe it would justify what, in effect, would be a partial rescission of a contract which has otherwise been wholly performed. *See generally* Lummus Company v. Commonwealth Oil Refining Co., 280 F.2d 915, 925–928 (1st Cir. 1960). *See also* Jackson v. Anderson, 355 Ill. 550, 555, 189 N.E. 924, 926 (1934); Corbett v. Devon Bank, 12 Ill. App.3d 559, 574, 299 N.E.2d 521, 530 (1973). There is no evidence that Gates' acceptance of paragraph 7 of the USM proposal—as contrasted with its acceptance of the entire proposal—was separately induced by fraud.[38] We conclude that the district court correctly held that the contract forecloses any recovery of consequential damages.

Accordingly, the judgment is reversed and the case is remanded for further proceedings.

---

**37.** "5. We warrant the machinery or equipment described herein, so far as the same is of our own manufacture, against defects in material and workmanship under the normal use and service for which it is designed, for a period of one year after date of shipment; our obligation under this warranty being limited, however, to the furnishing or repairing of, at our option, a part or parts determined by us to be defective . . . ."

**38.** We note that in Count III of its amended complaint Gates claimed damages, but not rescission, on the basis of defendant's alleged fraud. The district court entered summary judgment for the defendant on this count on the ground that the claim was barred by limitation. Plaintiff has not appealed from that ruling.

We also note that the district court does not appear to have explained the basis for its rejection of Gates' contention that fraud in the inducement vitiates the limitation of liability provision. Nevertheless, we believe affirmance of this aspect of the case is required for the reasons stated in the text.